TM:EAG
F.#2010R00153

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

ANDREW RUSSO,
    also known as "Mush,"
RALPH ARPAIO,
JOHN AZZARELLI,
    also known as "Johnny Cash,"
DANIEL BOGAN,
ANTHONY CALABRO,
    also known as "Nooch,"
ROGER CALIFANO,
DANIEL CAPALDO,
JOSEPH CARNA,
    also known as "Junior
    Lollipops,"
MICHAEL CASTELLANO,
    also known as "Big Mike,"
BENJAMIN CASTELLAZZO,
    also known as "Benji,"
    "The Claw" and "the Fang,"
DENNIS DELUCIA,
    also known as "Fat Dennis,"
    "Little Dennis" and "the
    Beard,"
GIUSEPPE DESTEFANO,
    also known as "Pooch,"
JOSEPH DIMARCO,
JOHN DUNN,
    also known as "Johnny Five,"
ANTHONY DURSO,
    also known as "Baby Fat
    Larry" and "BFL,"
SCOTT FAPPIANO,
EMANUELE FAVUZZA,
    also known as "Manny,"
VINCENT FEBBRARO,
    also known as "Jimmy Gooch,"
RICHARD FUSCO,
    also known as "Richie,"

I N D I C T M E N T

Cr. No. _____
(T. 18, U.S.C., §§ 371,
892(a), 893, 894(a)(1),
922(g)(1), 924(a)(2),
924(c)(1)(A)(i),
924(c)(1)(A)(ii), 924(d),
981(a)(1)(C), 982,
982(a)(2)(A), 1343, 1349,
1951(a), 1952(a)(3)(A),
1955(a), 1955(d), 1956(h),
1962(d), 1963, 1963(a),
1963(m), 2342(a), 2344(a),
2 and 3551 et seq.; T. 21,
U.S.C., §§ 841(a)(1),
841(b)(1)(D), 846, 853(a),
853(p); T. 28, U.S.C.,
§ 2461(c))

GAETANO GALLO,
  also known as "Tommy,"
GIOVANNI GALLUZZO,
  also known as "John,"
ALI JUSEINOSKI,
JOHN MAGGIO,
REYNOLD MARAGNI,
  also known as "Ren" and
  "Reynolds,"
HECTOR PAGAN,
  also known as "Junior,"
THEODORE PERSICO, JR.,
  also known as "Teddy" and "the
  kid,"
FRANK PONTILLO,
  also known as "Frankie Steel,"
NICKY RIZZO,
JACK RIZZOCASCIO,
  also known as "Jack the Whack,"
JOHN ROSSANO,
ANTHONY RUSSO,
  also known as "Big Anthony,"
JOSEPH SAVARESE,
RALPH SCOPO, JR.,
FRANK SENATORE,
  also known as "Buzz,"
ILARIO SESSA,
  also known as "Larry," "Fat
  Larry" and "FL,"
ANGELO SPATA,
  also known as "Little Angelo,"
LOUIS VENTURELLI,
  also known as "Louie Ices,"
JOSEPH VIRZI and
VITO VIZZI,

     Defendants.

- - - - - - - - - - - - - - - - -X

THE GRAND JURY CHARGES:

<u>INTRODUCTION TO ALL COUNTS</u>

  At all times relevant to this Indictment, unless
otherwise indicated:

<u>The Enterprise</u>

1.   The members and associates of the Colombo organized crime family of La Cosa Nostra constituted an "enterprise," as defined in Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact (hereinafter, the "Colombo crime family" and the "enterprise"). The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. The Colombo crime family engaged in, and its activities affected, interstate and foreign commerce. The Colombo crime family was an organized criminal group that operated in the Eastern District of New York and elsewhere.

2.   La Cosa Nostra operated through organized crime families. Five of these crime families – the Bonanno, Colombo, Gambino, Genovese and Luchese crime families – were headquartered in New York City and supervised criminal activity in New York, in other areas of the United States and, in some instances, in other countries. Another crime family, the Decavalcante crime family, operated principally in New Jersey, but from time to time also in New York City.

3.   The ruling body of La Cosa Nostra, known as the "Commission," consisted of leaders from each of the crime families. The Commission convened from time to time to decide

certain issues affecting all of the crime families, such as rules governing crime family membership.

4.    The Colombo crime family had a hierarchy and structure.  The head of the Colombo crime family was known as the "boss."  The Colombo crime family boss was assisted by an "underboss" and a counselor known as a "consigliere."  Together, the boss, underboss and consigliere were the crime family's "administration."  With the assistance of the underboss and consigliere, the boss was responsible for, among other things, setting policy and resolving disputes within and between La Cosa Nostra crime families and other criminal groups.  The administration further supervised, supported, protected and disciplined the lower-ranking participants in the crime family.  In return for their supervision and protection, the administration received part of the illegal earnings generated by the crime family.  Members of the Colombo crime family served in an "acting" rather than "official" capacity in the administration on occasion due to another administration member's incarceration or ill health, or for the purpose of seeking to insulate another administration member from law enforcement scrutiny.  Further, on occasion, the Colombo crime family was overseen by a "panel" of crime family members that did not include the boss, underboss and/or consigliere.

5.   Below the administration of the Colombo crime family were numerous "crews," also known as "regimes" and "decinas."   Each crew was headed by a "captain," also known as a "skipper," "caporegime" and "capodecina."   Each captain's crew consisted of "soldiers" and "associates."   The captain was responsible for supervising the criminal activities of his crew and providing the crew with support and protection.   In return, the captain often received a share of the crew's earnings.

6.   Only members of the Colombo crime family could serve as a boss, underboss, consigliere, captain or soldier. Members of the crime family were referred to on occasion as "goodfellas" or "wiseguys," or as persons who had been "straightened out" or who had their "button."   Associates were individuals who were not members of the crime family, but who nonetheless engaged in criminal activity for, and under the protection of, the crime family.

7.   Many requirements existed before an associate could become a member of the Colombo crime family.   The Commission of La Cosa Nostra from time to time limited the number of new members that could be added to a crime family.   An associate was also required to be proposed for membership by an existing crime family member.   When the crime family's administration considered the associate worthy of membership, the administration then circulated the proposed associate's name on a

list given to other La Cosa Nostra crime families, which the other crime families reviewed and either approved or disapproved. Unless there was an objection to the associate's membership, the crime family then "inducted," or "straightened out," the associate as a member of the crime family in a secret ceremony. During the ceremony, the associate, among other things: swore allegiance for life to the crime family above all else, even the associate's own family; swore, on penalty of death, never to reveal the crime family's existence, criminal activities and other secrets; and swore to follow all orders issued by the crime family boss, including swearing to commit murder if the boss directed it.

<u>Methods and Means of the Enterprise</u>

8.     The principal purpose of the Colombo crime family was to generate money for its members and associates.  This purpose was implemented by members and associates of the Colombo crime family through various criminal activities, including drug trafficking, robbery, extortion, fraud, illegal gambling and loansharking.  The members and associates of the Colombo crime family also furthered the enterprise's criminal activities by threatening economic injury and using and threatening to use physical violence, including murder.

9.     Although the primary purpose of the Colombo crime family was to generate money for its members and associates, the

members and associates at times used the resources of the family to settle personal grievances and vendettas, sometimes with the approval of higher-ranking members of the family.  For those purposes, members and associates of the enterprise were asked and expected to carry out, among other crimes, acts of violence, including murder and assault.

10.  The members and associates of the Colombo crime family engaged in conduct designed to prevent government detection of their identities, their illegal activities and the location of proceeds of those activities.  That conduct included a commitment to murdering persons, particularly members or associates of the crime families, who were perceived as potential witnesses against members and associates of the enterprise.

11.  Members and associates of the Colombo crime family often coordinated criminal activity with members and associates of other organized crime families.

<u>The Defendants</u>

12.  At various times relevant to this Indictment, the defendant ANDREW RUSSO, also known as "Mush," was a street boss, captain, soldier and associate within the Colombo crime family.

13.  At various times relevant to this Indictment, the defendant BENJAMIN CASTELLAZZO, also known as "Benji," "the Claw" and "the Fang," was an underboss, captain, soldier and associate within the Colombo crime family.

14.   At various times relevant to this Indictment, the defendants JOSEPH CARNA, also known as "Junior Lollipops," DENNIS DELUCIA, also known as "Fat Dennis," "Little Dennis" and "the Beard," REYNOLD MARAGNI, also known as "Ren" and "Reynolds," and ANTHONY RUSSO, also known as "Big Anthony," were captains, soldiers and associates within the Colombo crime family.

15.   At various times relevant to this Indictment, the defendants EMANUELE FAVUZZA, also known as "Manny," VINCENT FEBBRARO, also known as "Jimmy Gooch," NICKY RIZZO, JOSEPH SAVARESE and RALPH SCOPO, JR. were soldiers and associates within the Colombo crime family.

16.   At various times relevant to this Indictment, the defendants DANIEL BOGAN, ANTHONY CALABRO, also known as "Nooch," ROGER CALIFANO, MICHAEL CASTELLANO, also known as "Big Mike," GIUSEPPE DESTEFANO, also known as "Pooch," SCOTT FAPPIANO, ALI JUSEINOSKI, JACK RIZZOCASCIO, also known as "Jack the Whack," FRANK SENATORE, also known as "Buzz," ILARIO SESSA, also known as "Larry," "Fat Larry" and "FL," and ANGELO SPATA, also known as "Little Angelo," were associates within the Colombo crime family.

<u>COUNT ONE</u>
(Racketeering Conspiracy)

17.   The allegations contained in paragraphs 1 through 16 are realleged and incorporated as if fully set forth in this paragraph.

8

18.   In or about and between June 1991 and January 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants DANIEL BOGAN, ANTHONY CALABRO, also known as "Nooch," ROGER CALIFANO, JOSEPH CARNA, also known as "Junior Lollipops," MICHAEL CASTELLANO, also known as "Big Mike," BENJAMIN CASTELLAZZO, also known as "Benji," "the Claw" and "the Fang," GIUSEPPE DESTEFANO, also known as "Pooch," SCOTT FAPPIANO, EMANUELE FAVUZZA, also known as "Manny," VINCENT FEBBRARO, also known as "Jimmy Gooch," ALI JUSEINOSKI, NICKY RIZZO, JACK RIZZOCASCIO, also known as "Jack the Whack," ANTHONY RUSSO, also known as "Big Anthony," FRANK SENATORE, also known as "Buzz," and ANGELO SPATA, also known as "Little Angelo," together with others, being persons employed by and associated with the Colombo crime family, an enterprise that engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly and intentionally conspire to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisting of the racketeering acts set forth below.  Each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

9

RACKETEERING ACT ONE
(Murder/Murder Conspiracy – Joseph Scopo)

19.   The defendant named below agreed to the commission of the following acts, either one of which alone constitutes Racketeering Act One:

A.   Conspiracy to Murder Joseph Scopo

20.   On or about and between June 20, 1991 and October 20, 1993, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANTHONY RUSSO, together with others, did knowingly and intentionally conspire to cause the death of Joseph Scopo, contrary to New York Penal Law Sections 125.25(1) and 105.15.

B.   Murder of Joseph Scopo

21.   On or about October 20, 1993, within the Eastern District of New York, the defendant ANTHONY RUSSO, together with others, with intent to cause the death of Joseph Scopo, did cause his death, contrary to New York Penal Law Sections 125.25(1) and 20.00.

RACKETEERING ACT TWO
(Receipt of Stolen Property - Video Games)

22.   On or about and between October 20, 1994 and October 27, 1994, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANTHONY RUSSO, together with others, did knowingly and intentionally receive, possess, conceal, store, barter, sell and

dispose of goods, wares and merchandise, to wit: video games of a
value of $5,000 or more, which goods, wares and merchandise had
crossed a State boundary after being stolen, unlawfully converted
and taken, knowing the same to have been stolen, unlawfully
converted and taken, contrary to Title 18, United States Code,
Sections 2315 and 2.

<u>RACKETEERING ACT THREE</u>
(Wire Fraud – Personal Loans)

23.  In or about and between 1995 and 2000, both dates
being approximate and inclusive, within the Eastern District of
New York and elsewhere, the defendants ANTHONY CALABRO, MICHAEL
CASTELLANO and FRANK SENATORE, together with others, did
knowingly and intentionally devise a scheme and artifice to
defraud, and to obtain money and property by means of materially
false and fraudulent pretenses, representations and promises, and
for the purpose of executing such scheme and artifice, did
transmit and cause to be transmitted by means of wire
communication in interstate and foreign commerce, writings,
signs, signals, pictures and sounds, to wit: telephone calls in
which the conspirators made false promises to fund personal loans
and faxes of confirmation letters, contrary to Title 18, United
States Code, Sections 1343 and 2.

24.  It was a part of the scheme that the defendant
MICHAEL CASTELLANO, together with others, placed advertisements
in newspapers, falsely promising to loan money to individuals

with poor credit histories in exchange for an up-front payment. It was a further part of the scheme that the defendants MICHAEL CASTELLANO and ANTHONY CALABRO, together with others, faxed confirmation letters, containing the terms of the purported loan, including the amount of the up-front payment required to obtain the purported loan.  It was a further part of the scheme that the conspirators arranged for the customers to transmit by Western Union the up-front payment, which the defendants MICHAEL CASTELLANO and FRANK SENATORE, together with others, then collected.

RACKETEERING ACT FOUR
(Extortion – John Doe #1)

25.  On or about and between April 8, 1996 and February 7, 1997, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant NICKY RIZZO, together with others, did knowingly and intentionally steal property by extortion, in that the defendant and others obtained property, to wit: money, by compelling and inducing John Doe #1, an individual whose identity is known to the Grand Jury, to deliver such property by instilling in him a fear that, if the property were not so delivered, a person would testify and provide information with respect to another's legal claim and defense, contrary to New York Penal Law Sections 155.30(6), 155.05(2)(e)(vii) and 20.00.

RACKETEERING ACT FIVE
(Extortion - John Doe #2)

26.   In or about and between September 1997 and May
1999, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendant
EMANUELE FAVUZZA, together with others, did knowingly and
intentionally steal property by extortion, in that the defendant
and others obtained property, to wit: money, by compelling and
inducing John Doe #2, an individual whose identity is known to
the Grand Jury, to deliver such property by instilling in him a
fear that, if the property were not so delivered, the defendant
and others would (1) cause physical injury to John Doe #2 in the
future and (2) cause damage to property, contrary to New York
Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii)
and 20.00.

RACKETEERING ACT SIX
(Extortionate Extension/Collection of Credit - John Doe #3)

27.   The defendant named below agreed to the commission
of the following acts, either one of which alone constitutes
Racketeering Act Six:

A.   Extortionate Extension of Credit

28.   In or about and between September 1998 and
February 2002, both dates being approximate and inclusive, within
the Eastern District of New York and elsewhere, the defendant
BENJAMIN CASTELLAZZO, together with others, did knowingly and

13

intentionally make an extortionate extension of credit to John Doe #3, an individual whose identity is known to the Grand Jury, contrary to Title 18, United States Code, Section 892(a).

B.    Extortionate Collection of Credit

29.   In or about and between September 1998 and February 2002, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant BENJAMIN CASTELLAZZO, together with others, did knowingly and intentionally participate in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #3, contrary to Title 18, United States Code, Sections 894(a)(1) and 2.

RACKETEERING ACT SEVEN
(Extortion Conspiracy – John Doe #4)

30.   In or about 1999, within the Eastern District of New York and elsewhere, the defendant NICKY RIZZO, together with others, did knowingly and intentionally conspire to steal property by extortion, in that the defendant and others agreed to obtain property, to wit: money, by compelling and inducing John Doe #4, an individual whose identity is known to the Grand Jury, to deliver such property by instilling in him a fear that, if the property were not so delivered, other persons would cause damage to property, contrary to New York Penal Law Sections 155.40(2), 155.05(2)(e)(ii) and 105.10.

14

RACKETEERING ACT EIGHT
(Extortionate Extension/Collection of Credit - John Doe #5)

31.  The defendant named below agreed to the commission of the following acts, either one of which alone constitutes Racketeering Act Eight:

A.  Extortionate Extension of Credit

32.  In or about and between February 1999 and May 1999, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant EMANUELE FAVUZZA, together with others, did knowingly and intentionally make an extortionate extension of credit to John Doe #5, an individual whose identity is known to the Grand Jury, contrary to Title 18, United States Code, Section 892(a).

B.  Extortionate Collection of Credit

33.  In or about and between February 1999 and May 1999, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant EMANUELE FAVUZZA, together with others, did knowingly and intentionally participate in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #5, contrary to Title 18, United States Code, Section 894(a)(1).

RACKETEERING ACT NINE
(Extortionate Collection of Credit/
Extortion Conspiracy - John Doe #6)

34.   The defendants named below agreed to the commission of the following acts, either one of which alone constitutes Racketeering Act Nine:

A.   Federal Extortionate Collection of Credit Conspiracy

35.   In or about and between February 1999 and September 2000, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants EMANUELE FAVUZZA and GIUSEPPE DESTEFANO, together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #6, an individual whose identity is known to the Grand Jury, contrary to Title 18, United States Code, Section 894(a)(1).

B.   State Extortion Conspiracy

36.   In or about and between February 1999 and September 2000, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants EMANUELE FAVUZZA and GIUSEPPE DESTEFANO, together with others, did knowingly and intentionally conspire to steal property by extortion, in that the defendants and others agreed to obtain property, to wit: money, by compelling and inducing John Doe #6 to deliver such property by instilling in him a fear

16

that, if the property were not so delivered, the defendants and others would (1) cause physical injury to John Doe #6 in the future and (2) cause damage to property, contrary to New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

RACKETEERING ACT TEN
(Extortion/Extortion Conspiracy – John Doe #7)

37.   The defendant named below agreed to the commission of the following acts, any one of which alone constitutes Racketeering Act Ten:

A.   <u>Federal Extortion Conspiracy</u>

38.   In or about and between 2001 and 2004, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant BENJAMIN CASTELLAZZO, together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendant and others agreed to obtain property, to wit: the property of a commercial business, from John Doe #7, an individual whose identity is known to the Grand Jury, with his consent, which consent was to be induced through wrongful use of actual and threatened force, violence and fear, contrary to Title 18, United States Code, Section 1951(a).

17

B.    <u>Federal Extortion</u>

39.    In or about and between 2001 and 2004, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant BENJAMIN CASTELLAZZO, together with others, did knowingly and intentionally obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendant and others obtained property, to wit: the property of a commercial business, from John Doe #7, with his consent, which consent was induced through wrongful use of actual and threatened force, violence and fear, contrary to Title 18, United States Code, Sections 1951(a) and 2.

C.    <u>State Extortion Conspiracy</u>

40.    In or about and between 2001 and 2004, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant BENJAMIN CASTELLAZZO, together with others, did knowingly and intentionally conspire to steal property by extortion, in that the defendant and others agreed to obtain property, to wit: the property of a commercial business, by compelling and inducing John Doe #7 to deliver such property by instilling in him a fear that, if the property were not so delivered, the defendant and others would (1) cause physical injury to some person in the future and (2) cause damage

to property, contrary to New York Penal Law Sections 155.40(2),
155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

     D.   <u>State Extortion</u>

     41.  In or about and between 2001 and 2004, both dates
being approximate and inclusive, within the Eastern District of
New York and elsewhere, the defendant BENJAMIN CASTELLAZZO,
together with others, did knowingly and intentionally steal
property by extortion, in that the defendant and others obtained
property, to wit: the property of a commercial business, by
compelling and inducing John Doe #7 to deliver such property by
instilling in him a fear that, if the property were not so
delivered, the defendant and others would (1) cause physical
injury to some person in the future and (2) cause damage to
property, contrary to New York Penal Law Sections 155.40(2),
155.05(2)(e)(i), 155.05(2)(e)(ii) and 20.00.

<u>RACKETEERING ACT ELEVEN</u><br>
(Money Laundering Conspiracy –<br>
JOHN AZZARELLI's Illegal Gambling Business)

     42.  In or about and between 2003 and 2011, both dates
being approximate and inclusive, within the Eastern District of
New York and elsewhere, the defendant BENJAMIN CASTELLAZZO,
together with others, did knowingly and intentionally conspire to
conduct financial transactions affecting interstate commerce, to
wit: the transfer and delivery of United States currency, which
transactions in fact involved the proceeds of specified unlawful

19

activity, to wit: proceeds from JOHN AZZARELLI's illegal gambling business, contrary to New York Penal Law Sections 225.05 and 20.00, knowing that the property involved in the transactions represented the proceeds of some form of unlawful activity, with the intent to promote the carrying on of the specified unlawful activity, contrary to Title 18, United States Code, Sections 1956(h) and 1956(a)(1)(A)(i).

RACKETEERING ACT TWELVE
(Extortionate Collection of Credit Conspiracy/
Extortionate Collection of Credit/Extortion Conspiracy -
Gambino Individual #1)

43.   The defendants named below agreed to the commission of the following acts, any one of which alone constitutes Racketeering Act Twelve:

A.   Federal Extortionate Collection of Credit Conspiracy

44.   In or about and between December 2004 and April 2006, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants DANIEL BOGAN and VINCENT FEBBRARO, together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to collect and attempt to collect an extension of credit from an individual affiliated with the Gambino crime family ("Gambino Individual #1"), contrary to Title 18, United States Code, Section 894(a)(1).

B.   Federal Extortionate Collection of Credit

45.   In or about and between December 2004 and April

20

2006, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DANIEL BOGAN, together with others, did knowingly and intentionally participate in the use of extortionate means to collect and attempt to collect an extension of credit from Gambino Individual #1, contrary to Title 18, United States Code, Section 894(a)(1).

      C.   State Extortion Conspiracy

      46.  In or about and between December 2004 and April 2006, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants DANIEL BOGAN and VINCENT FEBBRARO, together with others, did knowingly and intentionally conspire to steal property by extortion, in that the defendants and others agreed to obtain property, to wit: money, by compelling and inducing Gambino Individual #1 to deliver such property by instilling in him a fear that, if the property were not so delivered, the defendants and others would (1) cause physical injury to some person in the future and (2) cause damage to property, contrary to New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

<u>RACKETEERING ACT THIRTEEN</u>
(Extortionate Extension of Credit Conspiracy/
Extortionate Extension of Credit)

      47.  The defendant named below agreed to the commission of the following acts, either one of which alone constitutes Racketeering Act Thirteen:

21

A.   <u>Extortionate Extension of Credit Conspiracy</u>

48.   In or about and between 2005 and 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DANIEL BOGAN, together with others, did knowingly and intentionally conspire to make one or more extortionate extensions of credit, contrary to Title 18, United States Code, Section 892(a).

B.   <u>Extortionate Extension of Credit</u>

49.   In or about and between 2005 and 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DANIEL BOGAN, together with others, did knowingly and intentionally make one or more extortionate extensions of credit, contrary to Title 18, United States Code, Sections 892(a) and 2.

<u>RACKETEERING ACT FOURTEEN</u>
(Marijuana Distribution Conspiracy/Marijuana Distribution)

50.   The defendant named below agreed to the commission of the following acts, either one of which alone constitutes Racketeering Act Fourteen:

A.   <u>Marijuana Distribution Conspiracy</u>

51.   In or about 2006, within the Eastern District of New York and elsewhere, the defendant JACK RIZZOCASCIO, together with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute a controlled substance, which offense involved a substance containing

22

marijuana, a Schedule I controlled substance, contrary to Title 21, United States Code, Sections 841(a)(1) and 846.

      B.   <u>Marijuana Distribution</u>

     52.  In or about 2006, within the Eastern District of New York and elsewhere, the defendant JACK RIZZOCASCIO, together with others, did knowingly and intentionally distribute and possess with intent to distribute a controlled substance, which offense involved a substance containing marijuana, a Schedule I controlled substance, contrary to Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

<u>RACKETEERING ACTS FIFTEEN TO EIGHTEEN</u><br>(Wire Fraud - MoneyGram)

     53.  In or about and between January 2007 and January 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant MICHAEL CASTELLANO, together with others, did knowingly and intentionally devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, as set forth below, contrary to Title 18, United States Code, Sections 1343 and 2.

23

| Racketeering Act | Date | Description of Communication |
|---|---|---|
| FIFTEEN | August 9, 2007 | Telephone call to MoneyGram to arrange fraudulent transaction |
| SIXTEEN | October 8, 2008 | Telephone call to MoneyGram to arrange fraudulent transaction |
| SEVENTEEN | October 21, 2008 | Telephone call to MoneyGram to arrange fraudulent transaction |
| EIGHTEEN | December 1, 2008 | Telephone call to MoneyGram to arrange fraudulent transaction |

54.   It was a part of the scheme that the defendant MICHAEL CASTELLANO, together with others, fraudulently obtained the identification numbers for various MoneyGram outlets.  It was a further part of the scheme that the defendant MICHAEL CASTELLANO placed telephone calls, in which he identified himself using the fraudulently-obtained identification numbers for MoneyGram outlets and arranged for money orders to be collected at other MoneyGram outlets.  It was a further part of the scheme that the defendant MICHAEL CASTELLANO, together with JOHN ROSSANO and others, traveled to those other MoneyGram outlets to collect the fraudulently-obtained money orders.

RACKETEERING ACT NINETEEN
(Money Laundering Conspiracy –
ROGER CALIFANO's Illegal Gambling Business)

55.   In or about and between 2008 and 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ROGER CALIFANO, BENJAMIN CASTELLAZZO, JOSEPH CARNA and NICKY RIZZO, together with others,

did knowingly and intentionally conspire to conduct financial
transactions affecting interstate commerce, to wit: the transfer
and delivery of United States currency, which transactions in
fact involved the proceeds of specified unlawful activity, to
wit: proceeds from ROGER CALIFANO's illegal gambling business,
contrary to New York Penal Law Sections 225.05 and 20.00, knowing
that the property involved in the transactions represented the
proceeds of some form of unlawful activity, with the intent to
promote the carrying on of the specified unlawful activity,
contrary to Title 18, United States Code, Sections 1956(h) and
1956(a)(1)(A)(i).

<u>RACKETEERING ACT TWENTY</u>
(Money Laundering Conspiracy – John Doe #8)

56.  In or about and between 2008 and 2011, both dates
being approximate and inclusive, within the Eastern District of
New York and elsewhere, the defendant JOSEPH CARNA, together with
others, did knowingly and intentionally conspire to conduct
financial transactions affecting interstate commerce, to wit: the
transfer and delivery of United States currency, which
transactions in fact involved the proceeds of specified unlawful
activity, to wit: proceeds from the illegal gambling business of
a cousin of John Doe #8, an individual whose identity is known to
the Grand Jury, contrary to New York Penal Law Sections 225.05
and 20.00, knowing that the property involved in the transactions
represented the proceeds of some form of unlawful activity, with

25

the intent to promote the carrying on of the specified unlawful activity, contrary to Title 18, United States Code, Sections 1956(h) and 1956(a)(1)(A)(i).

RACKETEERING ACT TWENTY-ONE
(Extortionate Collection of Credit Conspiracy/
Extortionate Collection of Credit/Extortion Conspiracy -
Gambino Individual #2)

57.   The defendant named below agreed to the commission of the following acts, any one of which alone constitutes Racketeering Act Twenty-one:

A.   Federal Extortionate Collection of Credit Conspiracy

58.   In or about and between February 2008 and June 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant GIUSEPPE DESTEFANO, together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to collect and attempt to collect an extension of credit from an individual affiliated with the Gambino crime family ("Gambino Individual #2"), contrary to Title 18, United States Code, Section 894(a)(1).

B.   Federal Extortionate Collection of Credit

59.   In or about and between February 2008 and June 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant GIUSEPPE DESTEFANO, together with others, did knowingly and intentionally participate in the use of extortionate means to

26

collect and attempt to collect an extension of credit from Gambino Individual #2, contrary to Title 18, United States Code, Sections 894(a)(1) and 2.

      C.   <u>State Extortion Conspiracy</u>

      60.  In or about and between February 2008 and June 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant GIUSEPPE DESTEFANO, together with others, did knowingly and intentionally conspire to steal property by extortion, in that the defendant and others agreed to obtain property, to wit: money, by compelling and inducing Gambino Individual #2 to deliver such property by instilling in him a fear that, if the property were not so delivered, the defendant and others would (1) cause physical injury to some person in the future and (2) cause damage to property, contrary to New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

<u>RACKETEERING ACT TWENTY-TWO</u>
(Extortionate Extension of Credit Conspiracy/
Extortionate Extension of Credit)

      61.  The defendant named below agreed to the commission of the following acts, either one of which alone constitutes Racketeering Act Twenty-two:

      A.   <u>Extortionate Extension of Credit Conspiracy</u>

      62.  In or about and between February 2008 and June 2009, both dates being approximate and inclusive, within the

Eastern District of New York and elsewhere, the defendant GIUSEPPE DESTEFANO, together with others, did knowingly and intentionally conspire to make one or more extortionate extensions of credit, contrary to Title 18, United States Code, Section 892(a).

  B. <u>Extortionate Extension of Credit</u>

    63. In or about and between February 2008 and June 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant GIUSEPPE DESTEFANO, together with others, did knowingly and intentionally make one or more extortionate extensions of credit, contrary to Title 18, United States Code, Sections 892(a) and 2.

<u>RACKETEERING ACT TWENTY-THREE</u><br>
(Extortionate Collection of Credit Conspiracy/Extortionate<br>
Collection of Credit/Extortion Conspiracy - John Doe #9)

    64. The defendants named below agreed to the commission of the following acts, any one of which alone constitutes Racketeering Act Twenty-three:

  A. <u>Federal Extortionate Collection of Credit Conspiracy</u>

    65. In or about and between May 2008 and June 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants DANIEL BOGAN and VINCENT FEBBRARO, together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to collect and attempt to collect an extension of credit

28

from John Doe #9, an individual whose identity is known to the Grand Jury, contrary to Title 18, United States Code, Section 894(a)(1).

B.   <u>Federal Extortionate Collection of Credit</u>

66.   In or about and between May 2008 and June 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants DANIEL BOGAN and VINCENT FEBBRARO, together with others, did knowingly and intentionally participate in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #9, contrary to Title 18, United States Code, Sections 894(a)(1) and 2.

C.   <u>State Extortion Conspiracy</u>

67.   In or about and between May 2008 and June 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants DANIEL BOGAN and VINCENT FEBBRARO, together with others, did knowingly and intentionally conspire to steal property by extortion, in that the defendants and others agreed to obtain property, to wit: money, by compelling and inducing John Doe #9 to deliver such property by instilling in him a fear that, if the property were not so delivered, the defendants and others would (1) cause physical injury to some person in the future and (2) cause damage

to property, contrary to New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

RACKETEERING ACT TWENTY-FOUR
(Extortionate Extension/Collection of Credit)

68.   The defendants named below agreed to the commission of the following acts, any one of which alone constitutes Racketeering Act Twenty-four:

A.   <u>Federal Extortionate Extension of Credit Conspiracy</u>

69.   In or about and between June 2008 and September 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANTHONY CALABRO, JACK RIZZOCASCIO and ANTHONY RUSSO, together with others, did knowingly and intentionally conspire to make one or more extortionate extensions of credit, contrary to Title 18, United States Code, Section 892(a).

B.   <u>Federal Extortionate Extension of Credit</u>

70.   In or about and between June 2008 and September 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANTHONY CALABRO, JACK RIZZOCASCIO and ANTHONY RUSSO, together with others, did knowingly and intentionally make one or more extortionate extensions of credit, contrary to Title 18, United States Code, Sections 892(a) and 2.

C.   Extortionate Collection of Credit Conspiracy

71.  In or about and between June 2008 and September 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANTHONY CALABRO, JACK RIZZOCASCIO and ANTHONY RUSSO, together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to collect and attempt to collect one or more extensions of credit, contrary to Title 18, United States Code, Section 894(a)(1).

D.   Extortionate Collection of Credit

72.  In or about and between June 2008 and September 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANTHONY CALABRO, JACK RIZZOCASCIO and ANTHONY RUSSO, together with others, did knowingly and intentionally participate in the use of extortionate means to collect and attempt to collect one or more extensions of credit, contrary to Title 18, United States Code, Sections 894(a)(1) and 2.

RACKETEERING ACT TWENTY-FIVE
(Extortionate Extension/Collection of Credit - John Doe #10)

73.  The defendant named below agreed to the commission of the following acts, either one of which alone constitutes Racketeering Act Twenty-five:

31

A.   <u>Extortionate Extension of Credit</u>

74.   In or about and between August 2008 and August 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant NICKY RIZZO, together with others, did knowingly and intentionally make an extortionate extension of credit to John Doe #10, an individual whose identity is known to the Grand Jury, contrary to Title 18, United States Code, Sections 892(a) and 2.

B.   <u>Extortionate Collection of Credit</u>

75.   In or about and between August 2008 and August 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant NICKY RIZZO, together with others, did knowingly and intentionally participate in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #10, contrary to Title 18, United States Code, Sections 894(a)(1) and 2.

<u>RACKETEERING ACT TWENTY-SIX</u>
(Illegal Gambling – Poker Games and Joker-Poker Machines)

76.   In or about and between June 2009 and January 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ROGER CALIFANO, together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business

32

involving poker games and joker-poker machines, which operated in violation of the laws of New York State, to wit: New York Penal Law Sections 225.05 and 20.00, which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation for a period in excess of thirty days and had a gross revenue of at least $2,000 in any single day, contrary to Title 18, United States Code, Sections 1955(a) and 2.

<u>RACKETEERING ACT TWENTY-SEVEN</u>
(Illegal Gambling – Sports Betting)

77.  In or about and between September 2009 and February 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANTHONY RUSSO and FRANK SENATORE, together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business involving sports betting, which operated in violation of the laws of New York State, to wit: New York Penal Law Sections 225.05 and 20.00, which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation for a period in excess of thirty days and had a gross revenue of at least $2,000 in any

single day, contrary to Title 18, United States Code, Sections 1955(a) and 2.

<u>RACKETEERING ACT TWENTY-EIGHT</u>
(Extortion Conspiracy)

78.  In or about October 2009, within the Eastern District of New York and elsewhere, the defendants GIUSEPPE DESTEFANO and ANTHONY RUSSO, together with others, did knowingly and intentionally conspire to steal property by extortion, in that the defendants and others agreed to obtain property, to wit: money, by compelling and inducing an individual to deliver such property by instilling in such individual a fear that, if the property were not so delivered, the defendants and others would (1) cause physical injury to some person in the future and (2) cause damage to property, contrary to New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

<u>RACKETEERING ACT TWENTY-NINE</u>
(Marijuana Distribution Conspiracy)

79.  In or about and between October 2009 and May 2010, both dates being approximate and inclusive, within the Eastern District of New York, the defendants ALI JUSEINOSKI and ANTHONY RUSSO, together with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute a controlled substance, which offense involved a substance containing marijuana, a Schedule I controlled substance, contrary to Title 21, United States Code, Sections 841(a)(1) and 846.

RACKETEERING ACT THIRTY
(Wire Fraud - Figli di Santa Rosalia)

80.  On or about and between December 16, 2009 and November 18, 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANGELO SPATA, together with others, did knowingly and intentionally devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, to wit: emails and faxes concerning an application for a permit for the annual Figli di Santa Rosalia, contrary to Title 18, United States Code, Sections 1343 and 2.

81.  It was a part of the scheme that, on or about May 27, 2010, a "Preliminary Income Summary Statement" was submitted on behalf of the Figli di Santa Rosalia, in which the defendant ANGELO SPATA falsely stated that the estimated gross income from vendors' fees at the 2010 Feast of Santa Rosalia ("Gross Income") was $51,000, and thus the estimated payment to the City of New York, at 20 percent of the Gross Income, was $10,200, significantly understating the estimated gross income and the estimated payment due.  It was a further part of the scheme that following the 2010 Feast of Santa Rosalia, a "Final Income

35

Summary Sheet" was submitted on behalf of Figli di Santa Rosalia, in which a conspirator falsely stated that the Gross Income was $43,000 and the total payment to the City of New York was $8,600, significantly understating the actual Gross Income and the total payment due.

RACKETEERING ACT THIRTY-ONE

(Illegal Gambling – Poker Games and Joker-Poker Machines)

82.  In or about and between March 2010 and July 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ROGER CALIFANO and ANGELO SPATA, together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business involving poker games and joker-poker machines, which operated in violation of the laws of New York State, to wit: New York Penal Law Sections 225.05 and 20.00, which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation for a period in excess of thirty days and had a gross revenue of at least $2,000 in any single day, contrary to Title 18, United States Code, Sections 1955(a) and 2.

<u>RACKETEERING ACT THIRTY-TWO</u>
(Extortionate Collection of Credit Conspiracy/
Extortion Conspiracy - John Doe #11)

83.  The defendant named below agreed to the commission of the following acts, either one of which alone constitutes Racketeering Act Thirty-two:

A.   <u>Federal Extortionate Collection of Credit Conspiracy</u>

84.  In or about and between March 2010 and January 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant SCOTT FAPPIANO, together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #11, an individual whose identity is known to the Grand Jury, contrary to Title 18, United States Code, Section 894(a)(1).

B.   <u>State Extortion Conspiracy</u>

85.  In or about and between March 2010 and January 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant SCOTT FAPPIANO, together with others, did knowingly and intentionally conspire to steal property by extortion, in that the defendant and others agreed to obtain property, to wit: money, by compelling and inducing John Doe #11 to deliver such property by instilling in him a fear that, if the property were not so delivered, the defendant and others would (1) cause physical

37

injury to some person in the future and (2) cause damage to property, contrary to New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

<u>RACKETEERING ACT THIRTY-THREE</u>
(Robbery Conspiracy)

86.  The defendants named below agreed to the commission of the following acts, either one of which alone constitutes Racketeering Act Thirty-three:

A.   <u>Federal Robbery Conspiracy</u>

87.  In or about and between May 2010 and June 2010, both dates being approximate and inclusive, within the Eastern District of New York, the defendants SCOTT FAPPIANO and ANTHONY RUSSO, together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by robbery, to wit: the robbery of one or more persons at a residence in Staten Island, New York of the proceeds of the sale of a heating oil company, contrary to Title 18, United States Code, Section 1951(a).

B.   <u>State Robbery Conspiracy</u>

88.  In or about and between May 2010 and June 2010, both dates being approximate and inclusive, within the Eastern District of New York, the defendants SCOTT FAPPIANO and ANTHONY RUSSO, together with others, did knowingly and intentionally conspire to forcibly steal property from one or more persons at a residence in Staten Island, New York, by threatening the

38

immediate use of physical force upon said persons and, in the
course of such robbery, displaying what appeared to be a firearm,
contrary to New York Penal Law Sections 160.10 and 105.10.

RACKETEERING ACT THIRTY-FOUR
(Extortion/Extortion Conspiracy – Gambino Crime Family)

89.   The defendants named below agreed to the
commission of the following acts, either one of which alone
constitutes Racketeering Act Thirty-four:

A.   Federal Extortion Conspiracy

90.   In or about and between May 2010 and August 2010,
both dates being approximate and inclusive, within the Eastern
District of New York and elsewhere, the defendants BENJAMIN
CASTELLAZZO and ANTHONY RUSSO, together with others, did
knowingly and intentionally conspire to obstruct, delay and
affect commerce, and the movement of articles and commodities in
commerce, by extortion, in that the defendants and others agreed
to obtain property, to wit: money belonging to the Gambino crime
family, from members of the Gambino crime family, with their
consent, which consent was to be induced through wrongful use of
actual and threatened force, violence and fear, contrary to Title
18, United States Code, Section 1951(a).

B.   State Extortion Conspiracy

91.   In or about and between May 2010 and August 2010,
both dates being approximate and inclusive, within the Eastern
District of New York and elsewhere, the defendants BENJAMIN

39

CASTELLAZZO and ANTHONY RUSSO, together with others, did knowingly and intentionally conspire to steal property by extortion, in that the defendants and others agreed to obtain property, to wit: money, by compelling and inducing members of the Gambino crime family to deliver such property by instilling in them a fear that, if the property were not so delivered, the defendants and others would (1) cause physical injury to some person in the future and (2) cause damage to property, contrary to New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

### RACKETEERING ACT THIRTY-FIVE
(Extortionate Collection of Credit - John Doe #12)

92.  In or about and between June 2010 and August 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ALI JUSEINOSKI, together with others, did knowingly and intentionally participate in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #12, an individual whose identity is known to the Grand Jury, contrary to Title 18, United States Code, Section 894(a)(1).

### RACKETEERING ACT THIRTY-SIX
(Extortion/Extortion Conspiracy - John Doe #13)

93.  The defendant named below agreed to the commission of the following acts, either one of which alone constitutes Racketeering Act Thirty-six:

A.   State Extortion Conspiracy

94.   In or about and between July 2010 and August 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant BENJAMIN CASTELLAZZO, together with others, did knowingly and intentionally conspire to steal property by extortion, in that the defendant and others agreed to obtain property, to wit: money, by compelling and inducing John Doe #13, an individual whose identity is known to the Grand Jury, to deliver such property by instilling in him a fear that, if the property were not so delivered, the defendant and others would (1) cause physical injury to some person in the future and (2) cause damage to property, contrary to New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

B.   State Extortion

95.   In or about and between July 2010 and August 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant BENJAMIN CASTELLAZZO, together with others, did knowingly and intentionally steal property by extortion, in that the defendant and others obtained property, to wit: money, by compelling and inducing John Doe #13 to deliver such property by instilling in him a fear that, if the property were not so delivered, the defendant and others would (1) cause physical injury to some

41

person in the future and (2) cause damage to property, contrary to New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 20.00.

<u>RACKETEERING ACT THIRTY-SEVEN</u>
(Extortion Conspiracy/Extortion Attempt - John Doe #14)

96. The defendants named below agreed to the commission of the following acts, either one of which alone constitutes Racketeering Act Thirty-seven:

A.   <u>State Extortion Conspiracy</u>

97. In or about and between July 2010 and August 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants GIUSEPPE DESTEFANO and ANTHONY RUSSO, together with others, did knowingly and intentionally conspire to steal property by extortion, in that the defendants and others agreed to obtain property, to wit: the right to operate an illegal gambling business, by compelling and inducing John Doe #14, an individual whose identity is known to the Grand Jury, to deliver such property by instilling in him a fear that, if the property were not so delivered, the defendants and others would (1) cause physical injury to some person in the future and (2) cause damage to property, contrary to New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

B.    <u>State Extortion Attempt</u>

98.   In or about and between July 2010 and August 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants GIUSEPPE DESTEFANO and ANTHONY RUSSO, together with others, did knowingly and intentionally attempt to steal property by extortion, in that the defendants and others attempted to obtain property, to wit: the right to operate an illegal gambling business, by compelling and inducing John Doe #14 to deliver such property by instilling in him a fear that, if the property were not so delivered, the defendants and others would (1) cause physical injury to some person in the future and (2) cause damage to property, contrary to New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii), 110.00 and 20.00.

<u>RACKETEERING ACT THIRTY-EIGHT</u>
(Extortionate Collection of Credit Conspiracy/
Extortionate Collection of Credit/Extortion Conspiracy -
Gambino Individual #3)

99.   The defendants named below agreed to the commission of the following acts, any one of which alone constitutes Racketeering Act Thirty-eight:

A.    <u>Federal Extortionate Collection of Credit Conspiracy</u>

100. In or about August 2010, within the Eastern District of New York and elsewhere, the defendants ROGER CALIFANO and ANTHONY RUSSO, together with others, did knowingly and intentionally conspire to participate in the use of extortionate

43

means to collect and attempt to collect an extension of credit from an individual affiliated with the Gambino crime family ("Gambino Individual #3"), contrary to Title 18, United States Code, Section 894(a)(1).

B.   Federal Extortionate Collection of Credit

101. In or about August 2010, within the Eastern District of New York and elsewhere, the defendant ROGER CALIFANO, together with others, did knowingly and intentionally participate in the use of extortionate means to collect and attempt to collect an extension of credit from Gambino Individual #3, contrary to Title 18, United States Code, Section 894(a)(1).

C.   State Extortion Conspiracy

102. In or about August 2010, within the Eastern District of New York and elsewhere, the defendants ROGER CALIFANO and ANTHONY RUSSO, together with others, did knowingly and intentionally conspire to steal property by extortion, in that the defendants and others agreed to obtain property, to wit: money, by compelling and inducing Gambino Individual #3 to deliver such property by instilling in him a fear that, if the property were not so delivered, the defendants and others would (1) cause physical injury to some person in the future and (2) cause damage to property, contrary to New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

<u>RACKETEERING ACT THIRTY-NINE</u>
(Extortionate Collection of Credit Conspiracy/Extortionate
Collection of Credit/Extortion Conspiracy - John Doe #15)

103. The defendant named below agreed to the commission of the following acts, any one of which alone constitutes Racketeering Act Thirty-nine:

A.   <u>Federal Extortionate Collection of Credit Conspiracy</u>

104. In or about and between September 2010 and January 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANTHONY RUSSO, together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #15, an individual whose identity is known to the Grand Jury, contrary to Title 18, United States Code, Section 894(a)(1).

B.   <u>Federal Extortionate Collection of Credit</u>

105. In or about and between September 2010 and January 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANTHONY RUSSO, together with others, did knowingly and intentionally participate in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #15, contrary to Title 18, United States Code, Sections 894(a)(1) and 2.

45

C.   <u>State Extortion Conspiracy</u>

106. In or about and between September 2010 and January 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANTHONY RUSSO, together with others, did knowingly and intentionally conspire to steal property by extortion, in that the defendant and others agreed to obtain property, to wit: money, by compelling and inducing John Doe #15 to deliver such property by instilling in him a fear that, if the property were not so delivered, the defendant and others would (1) cause physical injury to some person in the future and (2) cause damage to property, contrary to New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

<u>RACKETEERING ACT FORTY</u>
(Extortionate Collection of Credit Conspiracy/
Extortion Conspiracy - John Doe #16)

107. The defendant named below agreed to the commission of the following acts, either one of which alone constitutes Racketeering Act Forty:

A.   <u>Federal Extortionate Collection of Credit Conspiracy</u>

108. In or about and between September 2010 and January 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANTHONY RUSSO, together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to

46

collect and attempt to collect an extension of credit from John Doe #16, an individual whose identity is known to the Grand Jury, contrary to Title 18, United States Code, Section 894(a)(1).

B.   <u>State Extortion Conspiracy</u>

109. In or about and between September 2010 and January 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANTHONY RUSSO, together with others, did knowingly and intentionally conspire to steal property by extortion, in that the defendant and others agreed to obtain property, to wit: money, by compelling and inducing John Doe #16 to deliver such property by instilling in him a fear that, if the property were not so delivered, the defendant and others would (1) cause physical injury to some person in the future and (2) cause damage to property, contrary to New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

<u>RACKETEERING ACT FORTY-ONE</u>
(Extortionate Collection of Credit Conspiracy/Extortionate Collection of Credit/Extortion Conspiracy - John Doe #17)

110. The defendant named below agreed to the commission of the following acts, any one of which alone constitutes Racketeering Act Forty-one:

A.   <u>Federal Extortionate Collection of Credit Conspiracy</u>

111. In or about and between September 2010 and January 2011, both dates being approximate and inclusive, within the

Eastern District of New York and elsewhere, the defendant ANTHONY RUSSO, together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #17, an individual whose identity is known to the Grand Jury, contrary to Title 18, United States Code, Section 894(a)(1).

    B.    <u>Federal Extortionate Collection of Credit</u>

    112. In or about and between September 2010 and January 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANTHONY RUSSO, together with others, did knowingly and intentionally participate in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #17, contrary to Title 18, United States Code, Sections 894(a)(1) and 2.

    C.    <u>State Extortion Conspiracy</u>

    113. In or about and between September 2010 and January 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANTHONY RUSSO, together with others, did knowingly and intentionally conspire to steal property by extortion, in that the defendant and others agreed to obtain property, to wit: money, by compelling and inducing John Doe #17 to deliver such property by instilling in him a fear that, if the property were not so

48

delivered, the defendant and others would (1) cause physical injury to some person in the future and (2) cause damage to property, contrary to New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

RACKETEERING ACT FORTY-TWO
(Extortionate Collection of Credit Conspiracy/Extortionate Collection of Credit/Extortion Conspiracy - John Doe #18)

114. The defendant named below agreed to the commission of the following acts, any one of which alone constitutes Racketeering Act Forty-two:

A.   <u>Federal Extortionate Collection of Credit Conspiracy</u>

115. In or about and between September 2010 and January 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANTHONY RUSSO, together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #18, an individual whose identity is known to the Grand Jury, contrary to Title 18, United States Code, Section 894(a)(1).

B.   <u>Federal Extortionate Collection of Credit</u>

116. In or about and between September 2010 and January 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANTHONY RUSSO, together with others, did knowingly and intentionally participate in the use of extortionate means to collect and

attempt to collect an extension of credit from John Doe #18,

contrary to Title 18, United States Code, Sections 894(a)(1) and

2.

     C.    <u>State Extortion Conspiracy</u>

       117. In or about and between September 2010 and January

2011, within the Eastern District of New York and elsewhere, the

defendant ANTHONY RUSSO, together with others, did knowingly and

intentionally conspire to steal property by extortion, in that

the defendant and others agreed to obtain property, to wit:

money, by compelling and inducing John Doe #18 to deliver such

property by instilling in him a fear that, if the property were

not so delivered, the defendant and others would (1) cause

physical injury to some person in the future and (2) cause damage

to property, contrary to New York Penal Law Sections 155.40(2),

155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

<u>RACKETEERING ACT FORTY-THREE</u><br>
(Extortionate Collection of Credit Conspiracy/<br>
Extortion Conspiracy - John Doe #19)

       118. The defendant named below agreed to the commission

of the following acts, either one of which alone constitutes

Racketeering Act Forty-three:

     A.    <u>Federal Extortionate Collection of Credit Conspiracy</u>

       119. In or about and between November 2010 and January

2011, both dates being approximate and inclusive, within the

Eastern District of New York and elsewhere, the defendant ANTHONY

50

RUSSO, together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #19, an individual whose identity is known to the Grand Jury, contrary to Title 18, United States Code, Section 894(a)(1).

    B.   <u>State Extortion Conspiracy</u>

      120. In or about and between November 2010 and January 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANTHONY RUSSO, together with others, did knowingly and intentionally conspire to steal property by extortion, in that the defendant and others agreed to obtain property, to wit: money, by compelling and inducing John Doe #19 to deliver such property by instilling in him a fear that, if the property were not so delivered, the defendant and others would (1) cause physical injury to some person in the future and (2) cause damage to property, contrary to New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

      (Title 18, United States Code, Sections 1962(d), 1963 and 3551 <u>et</u> <u>seq</u>.)

<u>COUNT TWO</u>
(Racketeering Conspiracy)

      121. The allegations contained in paragraphs 1 through 16 are realleged and incorporated as if fully set forth in this paragraph.

51

122. In or about and between January 2002 and January 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANDREW RUSSO, also known as "Mush," DENNIS DELUCIA, also known as "Fat Dennis," "Little Dennis" and "the Beard," REYNOLD MARAGNI, also known as "Ren" and "Reynolds," JOSEPH SAVARESE, RALPH SCOPO, JR., and ILARIO SESSA, also known as "Larry," "Fat Larry" and "FL," together with others, being persons employed by and associated with the Colombo crime family, an enterprise that engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly and intentionally conspire to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisting of the racketeering acts set forth below. Each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

<u>RACKETEERING ACT ONE</u>
(Extortion/Extortion Conspiracy – Local 6A)

123. The defendants named below agreed to the commission of the following acts, any one of which alone constitutes Racketeering Act One:

A.   <u>Federal Extortion Conspiracy</u>

124. In or about and between 2001 and 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants REYNOLD MARAGNI and RALPH SCOPO, JR., together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others agreed to obtain property, to wit: (1) labor union positions, money paid as wages, employee benefits and other economic benefits that members of Cement and Concrete Workers Union Local 6A ("Local 6A union") would have obtained but for the defendants' corrupt influence over such union; (2) the right of Local 6A union members to free speech and democratic process in the affairs of their labor organization as guaranteed by Title 29, United States Code, Sections 411 and 481; and (3) the right of Local 6A union members to have the officers, agents, delegates, employees and other representatives of their labor organization manage the money, property and financial affairs of the organization in accordance with Title 29, United States Code, Section 501(a), from Local 6A union members, with their consent, which consent was to be induced through wrongful use of actual and threatened force, violence and fear, contrary to Title 18, United States Code, Section 1951(a).

53

B.     <u>Federal Extortion</u>

125. In or about and between 2001 and 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant RALPH SCOPO, JR., together with others, did knowingly and intentionally obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, and attempt so to do, in that the defendant and others obtained and attempted to obtain property, to wit: (1) labor union positions, money paid as wages, employee benefits and other economic benefits that Local 6A union members would have obtained but for the defendant's corrupt influence over such union; (2) the right of Local 6A union members to free speech and democratic process in the affairs of their labor organization as guaranteed by Title 29, United States Code, Sections 411 and 481; and (3) the right of Local 6A union members to have the officers, agents, delegates, employees and other representatives of their labor organization manage the money, property and financial affairs of the organization in accordance with Title 29, United States Code, Section 501(a), from Local 6A union members, with their consent, which consent was induced through wrongful use of actual and threatened force, violence and fear, contrary to Title 18, United States Code, Sections 1951(a) and 2.

C.    <u>State Extortion Conspiracy</u>

126. In or about and between 2001 and 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants REYNOLD MARAGNI and RALPH SCOPO, JR., together with others, did knowingly and intentionally conspire to steal property by extortion, in that the defendants and others agreed to obtain property, to wit: (1) labor union positions, money paid as wages, employee benefits and other economic benefits that Local 6A union members would have obtained but for the defendants' corrupt influence over such union; (2) the right of Local 6A union members to free speech and democratic process in the affairs of their labor organization as guaranteed by Title 29, United States Code, Sections 411 and 481; and (3) the right of Local 6A union members to have the officers, agents, delegates, employees and other representatives of their labor organization manage the money, property and financial affairs of the organization in accordance with Title 29, United States Code, Section 501(a), by compelling and inducing Local 6A union members to deliver such property by instilling in them a fear that, if the property were not so delivered, the defendants and others would (1) cause physical injury to some person in the future and (2) cause damage to property, contrary to New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

D.    <u>State Extortion</u>

127. In or about and between 2001 and 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant RALPH SCOPO, JR., together with others, did knowingly and intentionally steal property by extortion, in that the defendant and others obtained property, to wit: (1) labor union positions, money paid as wages, employee benefits and other economic benefits that Local 6A union members would have obtained but for the defendant's corrupt influence over such union; (2) the right of Local 6A union members to free speech and democratic process in the affairs of their labor organization as guaranteed by Title 29, United States Code, Sections 411 and 481; and (3) the right of Local 6A union members to have the officers, agents, delegates, employees and other representatives of their labor organization manage the money, property and financial affairs of the organization in accordance with Title 29, United States Code, Section 501(a), by compelling and inducing Local 6A union members to deliver such property by instilling in them a fear that, if the property were not so delivered, the defendant and others would (1) cause physical injury to some person in the future, (2) cause damage to property and (3) perform an act which would not in itself materially benefit the defendant and others but which was calculated to harm another person materially with respect to his health, safety,

business, calling, career, financial condition, reputations and personal relationships, contrary to New York Penal Law Sections 155.30(6), 155.05(2)(e)(i), 155.05(2)(e)(ii), 155.05(2)(e)(ix) and 20.00.

<u>RACKETEERING ACT TWO</u>
(Extortion/Extortion Conspiracy – Local 6A Coffee Boys)

128. The defendant named below agreed to the commission of the following acts, any one of which alone constitutes Racketeering Act Two:

A.   <u>Federal Extortion Conspiracy</u>

129. In or about and between 2001 and 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant RALPH SCOPO, JR., together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendant and others agreed to obtain property, to wit: money, from Local 6A union members who worked as coffee boys, with their consent, which consent was to be induced through wrongful use of actual and threatened force, violence and fear, contrary to Title 18, United States Code, Section 1951(a).

B.   <u>Federal Extortion</u>

130. In or about and between 2001 and 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant RALPH SCOPO, JR., together

with others, did knowingly and intentionally obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, and attempt so to do, in that the defendant and others obtained and attempted to obtain property, to wit: money, from Local 6A union members who worked as coffee boys, with their consent, which consent was induced through wrongful use of actual and threatened force, violence and fear, contrary to Title 18, United States Code, Sections 1951(a) and 2.

C.   State Extortion Conspiracy

131. In or about and between 2001 and 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant RALPH SCOPO, JR., together with others, did knowingly and intentionally conspire to steal property by extortion, in that the defendant and others agreed to obtain property, to wit: money, by compelling and inducing Local 6A union members who worked as coffee boys to deliver such property by instilling in them a fear that, if the property were not so delivered, the defendant and others would (1) cause physical injury to some person in the future and (2) cause damage to property, contrary to New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

D.   State Extortion

132. In or about and between 2001 and 2011, both dates being approximate and inclusive, within the Eastern District of

New York and elsewhere, the defendant RALPH SCOPO, JR., together with others, did knowingly and intentionally steal property by extortion, in that the defendant and others obtained property, to wit: money, by compelling and inducing Local 6A union members who worked as coffee boys to deliver such property by instilling in them a fear that, if the property were not so delivered, the defendant and others would (1) cause physical injury to some person in the future and (2) cause damage to property, contrary to New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 20.00.

<u>RACKETEERING ACT THREE</u>
(Money Laundering Conspiracy – John Doe #8)

133. In or about and between 2008 and 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant REYNOLD MARAGNI, together with others, did knowingly and intentionally conspire to conduct financial transactions affecting interstate commerce, to wit: the transfer and delivery of United States currency, which transactions in fact involved the proceeds of specified unlawful activity, to wit: proceeds from the illegal gambling business of a cousin of John Doe #8, contrary to New York Pernal Law Sections 225.05 and 20.00, knowing that the property involved in the transactions represented the proceeds of some form of unlawful activity, with the intent to promote the carrying on of the

specified unlawful activity, contrary to Title 18, United States Code, Sections 1956(h) and 1956(a)(1)(A)(i).

<u>RACKETEERING ACT FOUR</u>
(Extortionate Collection of Credit Conspiracy/Extortionate Collection of Credit/Extortion Conspiracy - Gambino Individual #2)

134. The defendant named below agreed to the commission of the following acts, any one of which alone constitutes Racketeering Act Four:

A.    <u>Federal Extortionate Collection of Credit Conspiracy</u>

135. In or about and between February 2008 and June 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ILARIO SESSA, together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to collect and attempt to collect an extension of credit from Gambino Individual #2, contrary to Title 18, United States Code, Section 894(a)(1).

B.    <u>Federal Extortionate Collection of Credit</u>

136. In or about and between February 2008 and June 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ILARIO SESSA, together with others, did knowingly and intentionally participate in the use of extortionate means to collect and attempt to collect an extension of credit from Gambino Individual

60

#2, contrary to Title 18, United States Code, Sections 894(a)(1) and 2.

    C.    <u>State Extortion Conspiracy</u>

      137. In or about and between February 2008 and June 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ILARIO SESSA, together with others, did knowingly and intentionally conspire to steal property by extortion, in that the defendant and others agreed to obtain property, to wit: money, by compelling and inducing Gambino Individual #2 to deliver such property by instilling in him a fear that, if the property were not so delivered, the defendant and others would (1) cause physical injury to some person in the future and (2) cause damage to property, contrary to New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

<u>RACKETEERING ACT FIVE</u><br>(Extortion Conspiracy/Extortion Attempt - Bronx Gambling Club)

      138. The defendants named below agreed to the commission of the following acts, either one of which alone constitutes Racketeering Act Five:

    A.    <u>State Extortion Conspiracy</u>

      139. In or about and between 2009 and 2011, both dates being approximate and inclusive, within the Southern District of New York and elsewhere, the defendants DENNIS DELUCIA and ILARIO SESSA, together with others, did knowingly and intentionally

61

conspire to steal property by extortion, in that the defendants and others agreed to obtain property, to wit: the right to operate an illegal gambling business in the Bronx, New York, by compelling and inducing one or more owners of the illegal gambling business to deliver such property by instilling in them a fear that, if the property were not so delivered, the defendants and others would (1) cause physical injury to some person in the future and (2) cause damage to property, contrary to New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

      B.   <u>State Extortion Attempt</u>

        140. In or about and between 2009 and 2011, both dates being approximate and inclusive, within the Southern District of New York and elsewhere, the defendants DENNIS DELUCIA and ILARIO SESSA, together with others, did knowingly and intentionally attempt to steal property by extortion, in that the defendants and others attempted to obtain property, to wit: the right to operate an illegal gambling business in the Bronx, New York, by compelling and inducing one or more owners of such illegal gambling business to deliver such property by instilling in them a fear that, if the property were not so delivered, the defendants and others would (1) cause physical injury to some person in the future and (2) cause damage to property, contrary

to New York Penal Law Sections 155.40(2), 155.05(2)(e)(i),
155.05(2)(e)(ii), 110.00 and 20.00.

RACKETEERING ACT SIX
(Attempted Extortion - Container Seller)

141. In or about and between May 2009 and June 2009,
both dates being approximate and inclusive, within the Eastern
District of New York and elsewhere, the defendant JOSEPH
SAVARESE, together with others, did knowingly and intentionally
attempt to steal property by extortion, in that the defendant and
others attempted to obtain property, to wit: the right to receive
payment for containers sold, by compelling and inducing an
individual who sold containers to deliver such property by
instilling in the individual a fear that, if the property were
not so delivered, the defendant and others would (1) cause
physical injury to some person in the future and (2) cause damage
to property, contrary to New York Penal Law Sections 155.40(2),
155.05(2)(e)(i), 155.05(2)(e)(ii), 110.00 and 20.00.

RACKETEERING ACT SEVEN
(Extortion Conspiracy/Extortion - John Doe #20)

142. The defendants named below agreed to the
commission of the following acts, either one of which alone
constitutes Racketeering Act Seven:

A.    State Extortion Conspiracy

143. In or about and between June 2009 and November
2010, both dates being approximate and inclusive, within the

63

Eastern District of New York and elsewhere, the defendants DENNIS DELUCIA and JOSEPH SAVARESE, together with others, did knowingly and intentionally conspire to steal property by extortion, in that the defendants and others agreed to obtain property, to wit: money, by compelling and inducing John Doe #20, an individual whose identity is known by the Grand Jury, to deliver such property by instilling in him a fear that, if the property were not so delivered, the defendants and others would (1) cause physical injury to some person in the future and (2) cause damage to property, contrary to New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

    B.   <u>State Extortion</u>

      144. In or about and between June 2009 and November 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants DENNIS DELUCIA and JOSEPH SAVARESE, together with others, did knowingly and intentionally steal property by extortion, in that the defendants and others obtained property, to wit: money, by compelling and inducing John Doe #20 to deliver such property by instilling in him a fear that, if the property were not so delivered, the defendants and others would (1) cause physical injury to some person in the future and (2) cause damage to property, contrary to New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 20.00.

<u>RACKETEERING ACT EIGHT</u>
(Illegal Gambling – Sports Betting)

145. In or about and between September 2009 and February 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOSEPH SAVARESE, together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business involving sports betting, which operated in violation of the laws of New York State, to wit: New York Penal Law Sections 225.05 and 20.00, which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation for a period in excess of thirty days and had a gross revenue of at least $2,000 in any single day, contrary to Title 18, United States Code, Sections 1955(a) and 2.

<u>RACKETEERING ACT NINE</u>
(Marijuana Distribution Conspiracy)

146. In or about and between October 2009 and May 2010, both dates being approximate and inclusive, within the Eastern District of New York, the defendant JOSEPH SAVARESE, together with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute a controlled substance, which offense involved a substance containing

marijuana, a Schedule I controlled substance, contrary to Title
21, United States Code, Sections 841(a)(1) and 846.

<u>RACKETEERING ACT TEN</u>
(Extortionate Collection of Credit Conspiracy/
Extortion Conspiracy - John Doe #21)

147. The defendant named below agreed to the commission
of the following acts, either one of which alone constitutes
Racketeering Act Ten:

A.   <u>Federal Extortionate Collection of Credit Conspiracy</u>

148. In or about and between December 2009 and March
2010, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendant JOSEPH
SAVARESE, together with others, did knowingly and intentionally
conspire to participate in the use of extortionate means to
collect and attempt to collect an extension of credit from John
Doe #21, an individual whose identity is known to the Grand Jury,
contrary to Title 18, United States Code, Section 894(a)(1).

B.   <u>State Extortion Conspiracy</u>

149. In or about and between December 2009 and March
2010, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendant JOSEPH
SAVARESE, together with others, did knowingly and intentionally
conspire to steal property by extortion, in that the defendant
and others agreed to obtain property, to wit: money, by
compelling and inducing John Doe #21 to deliver such property by

instilling in him a fear that, if the property were not so
delivered, the defendant and others would (1) cause physical
injury to some person in the future and (2) cause damage to
property, contrary to New York Penal Law Sections 155.40(2),
155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

## RACKETEERING ACT ELEVEN
(Illegal Gambling - Sports Betting)

150. In or about and between March 2010 and April 2010,
both dates being approximate and inclusive, within the Eastern
District of New York and elsewhere, the defendants JOSEPH
SAVARESE and ILARIO SESSA, together with others, did knowingly
and intentionally advance and profit from unlawful gambling
activity by engaging in bookmaking to the extent that the
defendants received and accepted in any one day more than five
bets totaling more than five thousand dollars, contrary to New
York Penal Law Sections 225.10(1) and 20.00.

## RACKETEERING ACT TWELVE
(Illegal Gambling – Poker Games and Joker-Poker Machines)

151. In or about and between March 2010 and July 2010,
both dates being approximate and inclusive, within the Eastern
District of New York and elsewhere, the defendant DENNIS DELUCIA,
together with others, did knowingly and intentionally conduct,
finance, manage, supervise, direct and own all or part of an
illegal gambling business, to wit: a gambling business involving
poker games and joker-poker machines, which operated in violation

67

of the laws of New York State, to wit: New York Penal Law

Sections 225.05 and 20.00, which involved five or more persons

who conducted, financed, managed, supervised, directed and owned

all or part of such business and which remained in substantially

continuous operation for a period in excess of thirty days and

had a gross revenue of at least $2,000 in any single day,

contrary to Title 18, United States Code, Sections 1955(a) and 2.

<u>RACKETEERING ACT THIRTEEN</u>
(Extortionate Collection of Credit Conspiracy/
Extortion Conspiracy - John Doe #11)

152.  The defendant named below agreed to the commission

of the following acts, either one of which alone constitutes

Racketeering Act Thirteen:

A.    <u>Federal Extortionate Collection of Credit Conspiracy</u>

153.  In or about and between March 2010 and January

2011, both dates being approximate and inclusive, within the

Eastern District of New York and elsewhere, the defendant REYNOLD

MARAGNI, together with others, did knowingly and intentionally

conspire to participate in the use of extortionate means to

collect and attempt to collect an extension of credit from John

Doe #11, contrary to Title 18, United States Code, Section

894(a)(1).

B.    <u>State Extortion Conspiracy</u>

154.  In or about and between March 2010 and January

2011, both dates being approximate and inclusive, within the

Eastern District of New York and elsewhere, the defendant REYNOLD

MARAGNI, together with others, did knowingly and intentionally

conspire to steal property by extortion, in that the defendant

and others agreed to obtain property, to wit: money, by

compelling and inducing John Doe #11 to deliver such property by

instilling in him a fear that, if the property were not so

delivered, the defendants and others would (1) cause physical

injury to some person in the future and (2) cause damage to

property, contrary to New York Penal Law Sections 155.40(2),

155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

<u>RACKETEERING ACT FOURTEEN</u>
(Interstate Travel in-aid-of Racketeering)

155. On or about and between March 12, 2010 and

November 9, 2010, both dates being approximate and inclusive,

within the Eastern District of New York and elsewhere, the

defendant REYNOLD MARAGNI, together with others, did knowingly

and intentionally travel in interstate commerce, and use the mail

and one or more facilities in interstate commerce, with intent to

promote, manage, establish, carry on, and facilitate the

promotion, management, establishment and carrying on of an

unlawful activity, to wit: the bribery of a public servant, in

violation of Florida Statute Section 838.015, and thereafter did

perform and attempt to perform such promotion, management,

establishment, carrying on and facilitation of the promotion,

management, establishment and carrying on of such unlawful

69

activity, contrary to Title 18, United States Code, Section
1952(a)(3)(A).

RACKETEERING ACT FIFTEEN
(Robbery Conspiracy)

156. The defendant named below agreed to the commission
of the following acts, either one of which alone constitutes
Racketeering Act Fifteen:

A. Federal Robbery Conspiracy

157. In or about and between May 2010 and June 2010,
both dates being approximate and inclusive, within the Eastern
District of New York, the defendant JOSEPH SAVARESE, together
with others, did knowingly and intentionally conspire to
obstruct, delay and affect commerce, and the movement of articles
and commodities in commerce, by robbery, to wit: the robbery of
one or more persons at a residence in Staten Island, New York of
the proceeds of the sale of a heating oil company, contrary to
Title 18, United States Code, Section 1951(a).

B. State Robbery Conspiracy

158. In or about and between May 2010 and June 2010,
both dates being approximate and inclusive, within the Eastern
District of New York, the defendant JOSEPH SAVARESE, together
with others, did knowingly and intentionally conspire to forcibly
steal property from one or more persons at a residence in Staten
Island, New York, by threatening the immediate use of physical
force upon said persons and, in the course of such robbery,

displaying what appeared to be a firearm, contrary to New York Penal Law Sections 160.10 and 105.10.

RACKETEERING ACT SIXTEEN
(Extortion/Extortion Conspiracy – Gambino Crime Family)

159. The defendants named below agreed to the commission of the following acts, either one of which alone constitutes Racketeering Act Sixteen:

A.   Federal Extortion Conspiracy

160. In or about and between May 2010 and August 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANDREW RUSSO and DENNIS DELUCIA, together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others agreed to obtain property, to wit: money belonging to the Gambino crime family, from members of the Gambino crime family, with their consent, which consent was to be induced through wrongful use of actual and threatened force, violence and fear, contrary to Title 18, United States Code, Section 1951(a).

B.   State Extortion Conspiracy

161. In or about and between May 2010 and August 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANDREW RUSSO and DENNIS DELUCIA, together with others, did knowingly and

intentionally conspire to steal property by extortion, in that the defendants and others agreed to obtain property, to wit: money, by compelling and inducing members of the Gambino crime family to deliver such property by instilling in them a fear that, if the property were not so delivered, the defendants and others would (1) cause physical injury to some person in the future and (2) cause damage to property, contrary to New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

<u>RACKETEERING ACT SEVENTEEN</u>
(Extortion Conspiracy/Extortion
- John Doe #13)

162. The defendant named below agreed to the commission of the following acts, either one of which alone constitutes Racketeering Act Seventeen:

A.    <u>State Extortion Conspiracy</u>

163. In or about and between July 2010 and August 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOSEPH SAVARESE, together with others, did knowingly and intentionally conspire to steal property by extortion, in that the defendant and others agreed to obtain property, to wit: money, by compelling and inducing John Doe #13 to deliver such property by instilling in him a fear that, if the property were not so delivered, the defendant and others would (1) cause physical

72

injury to some person in the future and (2) cause damage to property, contrary to New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

B.   State Extortion

164. In or about and between July 2010 and August 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOSEPH SAVARESE, together with others, did knowingly and intentionally steal property by extortion, in that the defendant and others obtained property, to wit: money, by compelling and inducing John Doe #13 to deliver such property by instilling in him a fear that, if the property were not so delivered, the defendant and others would (1) cause physical injury to some person in the future and (2) cause damage to property, contrary to New York Penal Law Sections 155.40(2), 155.05(2)(e)(i) and 155.05(2)(e)(ii).

RACKETEERING ACT EIGHTEEN
(Extortion Conspiracy/Extortion Attempt - John Doe #14)

165. The defendant named below agreed to the commission of the following acts, either one of which alone constitutes Racketeering Act Eighteen:

A.   State Extortion Conspiracy

166. In or about and between July 2010 and August 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOSEPH

73

SAVARESE, together with others, did knowingly and intentionally conspire to steal property by extortion, in that the defendant and others agreed to obtain property, to wit: the right to operate an illegal gambling business, by compelling and inducing John Doe #14 to deliver such property by instilling in him a fear that, if the property were not so delivered, the defendant and others would (1) cause physical injury to some person in the future and (2) cause damage to property, contrary to New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

     B.   <u>State Extortion Attempt</u>

     167. In or about and between July 2010 and August 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOSEPH SAVARESE, together with others, did knowingly and intentionally attempt to steal property by extortion, in that the defendant and others attempted to obtain property, to wit: the right to operate an illegal gambling business, by compelling and inducing John Doe #14 to deliver such property by instilling in him a fear that, if the property were not so delivered, the defendant and others would (1) cause physical injury to some person in the future and (2) cause damage to property, contrary to New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii), 110.00 and 20.00.

RACKETEERING ACT NINETEEN
(Extortionate Collection of Credit Conspiracy/
Extortion Conspiracy - Gambino Individual #3)

168. The defendant named below agreed to the commission of the following acts, either one of which alone constitutes Racketeering Act Nineteen:

A.   Federal Extortionate Collection of Credit Conspiracy

169. In or about August 2010, within the Eastern District of New York and elsewhere, the defendant ILARIO SESSA, together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to collect and attempt to collect an extension of credit from Gambino Individual #3, contrary to Title 18, United States Code, Section 894(a)(1).

B.   State Extortion Conspiracy

170. In or about August 2010, within the Eastern District of New York and elsewhere, the defendant ILARIO SESSA, together with others, did knowingly and intentionally conspire to steal property by extortion, in that the defendant and others agreed to obtain property, to wit: money, by compelling and inducing Gambino Individual #3 to deliver such property by instilling in him a fear that, if the property were not so delivered, the defendant and others would (1) cause physical injury to some person in the future and (2) cause damage to property, contrary to New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

RACKETEERING ACT TWENTY
(Possession of Contraband Cigarettes)

171. In or about and between August 2010 and September 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant REYNOLD MARAGNI, together with others, did knowingly and intentionally ship, transport, receive, possess, sell, distribute and purchase contraband cigarettes, contrary to Title 18, United States Code, Sections 2342(a), 2344(a) and 2.

RACKETEERING ACT TWENTY-ONE
(Extortionate Collection of Credit Conspiracy/
Extortion Conspiracy - Individual in North Carolina)

172. The defendant named below agreed to the commission of the following acts, any one of which alone constitutes Racketeering Act Twenty-one:

A.   Federal Extortionate Collection of Credit Conspiracy

173. In or about September 2010, within the Southern District of Florida and elsewhere, the defendant REYNOLD MARAGNI, together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to collect and attempt to collect an extension of credit from an individual in North Carolina, contrary to Title 18, United States Code, Section 894(a)(1).

B.   State Extortion Conspiracy

174. In or about September 2010, within the Southern District of Florida and elsewhere, the defendant REYNOLD MARAGNI,

together with others, did knowingly and intentionally conspire to maliciously threaten, verbally and by a written and printed communication, an injury to an individual in North Carolina, with intent to thereby extort money, contrary to Florida Statute Sections 836.05 and 777.04(3).

RACKETEERING ACT TWENTY-TWO
(Extortionate Collection of Credit Conspiracy/
Extortionate Collection of Credit/Extortion Conspiracy -
John Doe #15)

175. The defendant named below agreed to the commission of the following acts, any one of which alone constitutes Racketeering Act Twenty-two:

A.   <u>Federal Extortionate Collection of Credit Conspiracy</u>

176. In or about and between September 2010 and January 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ILARIO SESSA, together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #15, contrary to Title 18, United States Code, Section 894(a)(1).

B.   <u>Federal Extortionate Collection of Credit</u>

177. In or about and between September 2010 and January 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ILARIO SESSA, together with others, did knowingly and intentionally

77

participate in the use of extortionate means to collect and
attempt to collect an extension of credit from John Doe #15,
contrary to Title 18, United States Code, Sections 894(a)(1) and
2.

     C.   <u>State Extortion Conspiracy</u>

       178. In or about and between September 2010 and January
2011, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendant ILARIO
SESSA, together with others, did knowingly and intentionally
conspire to steal property by extortion, in that the defendant
and others agreed to obtain property, to wit: money, by
compelling and inducing John Doe #15 to deliver such property by
instilling in him a fear that, if the property were not so
delivered, the defendant and others would (1) cause physical
injury to some person in the future and (2) cause damage to
property, contrary to New York Penal Law Sections 155.40(2),
155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

<u>RACKETEERING ACT TWENTY-THREE</u>
(Extortionate Collection of Credit Conspiracy/
Extortion Conspiracy - John Doe #16)

       179. The defendant named below agreed to the commission
of the following acts, either one of which alone constitutes
Racketeering Act Twenty-three:

A.    <u>Federal Extortionate Collection of Credit Conspiracy</u>

180. In or about and between September 2010 and January 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANDREW RUSSO, together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #16, contrary to Title 18, United States Code, Section 894(a)(1).

B.    <u>State Extortion Conspiracy</u>

181. In or about and between September 2010 and January 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANDREW RUSSO, together with others, did knowingly and intentionally conspire to steal property by extortion, in that the defendant and others agreed to obtain property, to wit: money, by compelling and inducing John Doe #16 to deliver such property by instilling in him a fear that, if the property were not so delivered, the defendant and others would (1) cause physical injury to some person in the future and (2) cause damage to property, contrary to New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

<u>RACKETEERING ACT TWENTY-FOUR</u>
(Extortionate Collection of Credit Conspiracy/
Extortionate Collection of Credit/Extortion Conspiracy -
John Doe #17)

182. The defendant named below agreed to the commission of the following acts, any one of which alone constitutes Racketeering Act Twenty-four:

A.    <u>Federal Extortionate Collection of Credit Conspiracy</u>

183. In or about and between September 2010 and January 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ILARIO SESSA, together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #17, contrary to Title 18, United States Code, Sections 894(a)(1) and 2.

B.    <u>Federal Extortionate Collection of Credit</u>

184. In or about and between September 2010 and January 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ILARIO SESSA, together with others, did knowingly and intentionally participate in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #17, contrary to Title 18, United States Code, Sections 894(a)(1) and 2.

C.   <u>State Extortion Conspiracy</u>

185. In or about and between September 2010 and January 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ILARIO SESSA, together with others, did knowingly and intentionally conspire to steal property by extortion, in that the defendant and others agreed to obtain property, to wit: money, by compelling and inducing John Doe #17 to deliver such property by instilling in him a fear that, if the property were not so delivered, the defendant and others would (1) cause physical injury to some person in the future and (2) cause damage to property, contrary to New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

<u>RACKETEERING ACT TWENTY-FIVE</u>
(Extortionate Collection of Credit Conspiracy/Extortionate Collection of Credit/Extortion Conspiracy - John Doe #18)

186. The defendant named below agreed to the commission of the following acts, any one of which alone constitutes Racketeering Act Twenty-five:

A.   <u>Federal Extortionate Collection of Credit Conspiracy</u>

187. In or about and between September 2010 and January 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ILARIO SESSA, together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to

81

collect and attempt to collect an extension of credit from John Doe #18, contrary to Title 18, United States Code, Section 894(a)(1).

     B.   <u>Federal Extortionate Collection of Credit</u>

     188. In or about and between September 2010 and January 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ILARIO SESSA, together with others, did knowingly and intentionally participate in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #18, contrary to Title 18, United States Code, Sections 894(a)(1) and 2.

     C.   <u>State Extortion Conspiracy</u>

     189. In or about and between September 2010 and January 2011, within the Eastern District of New York and elsewhere, the defendant ILARIO SESSA, together with others, did knowingly and intentionally conspire to steal property by extortion, in that the defendant and others agreed to obtain property, to wit: money, by compelling and inducing John Doe #18 to deliver such property by instilling in him a fear that, if the property were not so delivered, the defendant and others would (1) cause physical injury to some person in the future and (2) cause damage to property, contrary to New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

<u>RACKETEERING ACT TWENTY-SIX</u>
(Marijuana Distribution Conspiracy)

190. In or about and between September 2010 and January 2011, both dates being approximate and inclusive, within the Eastern District of New York, the defendant REYNOLD MARAGNI, together with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute a controlled substance, which offense involved a substance containing marijuana, a Schedule I controlled substance, contrary to Title 21, United States Code, Sections 841(a)(1) and 846.

<u>RACKETEERING ACT TWENTY-SEVEN</u>
(Extortionate Collection of Credit Conspiracy/
Extortion Conspiracy - John Doe #19)

191. The defendant named below agreed to the commission of the following acts, either one of which alone constitutes Racketeering Act Twenty-seven:

A.   <u>Federal Extortionate Collection of Credit Conspiracy</u>

192. In or about and between November 2010 and January 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant REYNOLD MARAGNI, together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #19, contrary to Title 18, United States Code, Section 894(a)(1).

83

B.    State Extortion Conspiracy

193. In or about and between November 2010 and January 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant REYNOLD MARAGNI, together with others, did knowingly and intentionally conspire to steal property by extortion, in that the defendant and others agreed to obtain property, to wit: money, by compelling and inducing John Doe #19 to deliver such property by instilling in him a fear that, if the property were not so delivered, the defendant and others would (1) cause physical injury to some person in the future and (2) cause damage to property, contrary to New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

(Title 18, United States Code, Sections 1962(d), 1963 and 3551 et seq.)

COUNT THREE
(Extortion Conspiracy – Local 6A)

194. In or about and between 2001 and 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants REYNOLD MARAGNI, also known as "Ren" and "Reynolds," and RALPH SCOPO, JR., together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others agreed to obtain property, to wit: (1) labor union

positions, money paid as wages, employee benefits and other economic benefits that Local 6A union members would have obtained but for the defendants' corrupt influence over such union; (2) the right of Local 6A union members to free speech and democratic process in the affairs of their labor organization as guaranteed by Title 29, United States Code, Sections 411 and 481; and (3) the right of Local 6A union members to have the officers, agents, delegates, employees and other representatives of their labor organization manage the money, property and financial affairs of the organization in accordance with Title 29, United States Code, Section 501(a), from Local 6A union members, with their consent, which consent was to be induced through wrongful use of actual and threatened force, violence and fear.

(Title 18, United States Code, Sections 1951(a) and 3551 <u>et</u> <u>seq</u>.)

<u>COUNT FOUR</u>
(Extortion – Local 6A)

195. In or about and between 2001 and 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant RALPH SCOPO, JR., together with others, did knowingly and intentionally obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, and attempt so to do, in that the defendant and others obtained and attempted to obtain property, to wit: (1) labor union positions, money paid as wages, employee

benefits and other economic benefits that Local 6A union members would have obtained but for the defendant's corrupt influence over such union; (2) the right of Local 6A union members to free speech and democratic process in the affairs of their labor organization as guaranteed by Title 29, United States Code, Sections 411 and 481; and (3) the right of Local 6A union members to have the officers, agents, delegates, employees and other representatives of their labor organization manage the money, property and financial affairs of the organization in accordance with Title 29, United States Code, Section 501(a), from Local 6A union members, with their consent, which consent was induced through wrongful use of actual and threatened force, violence and fear.

(Title 18, United States Code, Sections 1951(a), 2 and 3551 <u>et</u> <u>seq</u>.)

<u>COUNT FIVE</u>
(Extortion Conspiracy – Local 6A Coffee Boys)

196. In or about and between 2001 and 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant RALPH SCOPO, JR., together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendant and others agreed to obtain property, to wit: money, from Local 6A union members who worked as coffee boys, with their consent,

86

which consent was to be induced through wrongful use of actual
and threatened force, violence and fear.

      (Title 18, United States Code, Sections 1951(a) and
3551 et seq.)

### COUNT SIX
(Extortion – Local 6A Coffee Boys)

      197. In or about and between 2001 and 2011, both dates
being approximate and inclusive, within the Eastern District of
New York and elsewhere, the defendant RALPH SCOPO, JR., together
with others, did knowingly and intentionally obstruct, delay and
affect commerce, and the movement of articles and commodities in
commerce, by extortion, and attempt so to do, in that the
defendant and others obtained and attempted to obtain property,
to wit: money, from Local 6A union members who worked as coffee
boys, with their consent, which consent was induced through
wrongful use of actual and threatened force, violence and fear.

      (Title 18, United States Code, Sections 1951(a), 2 and
3551 et seq.)

### COUNT SEVEN
(Money Laundering Conspiracy –
JOHN AZZARELLI's Gambling Business)

      198. In or about and between 2003 and 2011, both dates
being approximate and inclusive, within the Eastern District of
New York and elsewhere, the defendants BENJAMIN CASTELLAZZO, also
known as "Benji," "the Claw" and "the Fang," and JOHN AZZARELLI,
also known as "Johnny Cash," together with others, did knowingly

and intentionally conspire to conduct financial transactions affecting interstate commerce, to wit: the transfer and delivery of United States currency, which transactions in fact involved the proceeds of specified unlawful activity, to wit: proceeds from JOHN AZZARELLI's illegal gambling business, contrary to New York Penal Law Sections 225.05 and 20.00, knowing that the property involved in the transactions represented the proceeds of some form of unlawful activity, with the intent to promote the carrying on of the specified unlawful activity, contrary to Title 18, United States Code, Sections 1956(a)(1)(A)(i).

      (Title 18, United States Code, Sections 1956(h) and 3551 <u>et</u> <u>seq</u>.)

<u>COUNT EIGHT</u>
(Marijuana Distribution Conspiracy)

      199. In or about 2006, within the Eastern District of New York and elsewhere, the defendant JACK RIZZOCASCIO, also known as "Jack the Whack," together with others, did knowingly and intentionally conspire to distribute and possess with intent

88

to distribute a controlled substance, which offense involved a
substance containing marijuana, a Schedule I controlled
substance, contrary to Title 21, United States Code, Section
841(a)(1).

     (Title 21, United States Code, Sections 846 and
841(b)(1)(D); Title 18, United States Code, Sections 3551
<u>et</u> <u>seq</u>.)

COUNT NINE
(Marijuana Distribution)

     200. In or about 2006, within the Eastern District of
New York and elsewhere, the defendant JACK RIZZOCASCIO, also
known as "Jack the Whack," together with others, did knowingly
and intentionally distribute and possess with intent to
distribute a controlled substance, which offense involved a
substance containing marijuana, a Schedule I controlled
substance.

     (Title 21, United States Code, Sections 841(a)(1) and
841(b)(1)(D); Title 18, United States Code, Sections 2 and 3551
<u>et</u> <u>seq</u>.)

COUNT TEN
(Wire Fraud Conspiracy - MoneyGram)

     201. In or about and between January 2007 and January
2011, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendants
MICHAEL CASTELLANO, also known as "Big Mike," and JOHN ROSSANO,

89

together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, to wit: telephone calls to MoneyGram, contrary to Title 18, United States Code, Section 1343.

202. The allegations contained in paragraph 54 are realleged and incorporated as if fully set forth in this paragraph.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

<u>COUNTS ELEVEN TO FOURTEEN</u>
(Wire Fraud - MoneyGram)

203. In or about and between January 2007 and January 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants MICHAEL CASTELLANO, also known as "Big Mike," and JOHN ROSSANO, together with others, did knowingly and intentionally devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, did transmit and cause to be

transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, as set forth below.

| Count | Date | Description of Communication |
|-------|------|------------------------------|
| ELEVEN | August 9, 2007 | Telephone call to MoneyGram to arrange fraudulent transaction |
| TWELVE | October 8, 2008 | Telephone call to MoneyGram to arrange fraudulent transaction |
| THIRTEEN | October 21, 2008 | Telephone call to MoneyGram to arrange fraudulent transaction |
| FOURTEEN | December 1, 2008 | Telephone call to MoneyGram to arrange fraudulent transaction |

204. The allegations contained in paragraph 54 are realleged and incorporated as if fully set forth in this paragraph.

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

COUNT FIFTEEN
(Money Laundering Conspiracy -
ROGER CALIFANO's Gambling Business)

205. In or about and between 2008 and 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ROGER CALIFANO, BENJAMIN CASTELLAZZO, also known as "Benji," "the Claw" and "the Fang," JOSEPH CARNA, also known as "Junior Lollipops," and NICKY RIZZO, together with others, did knowingly and intentionally conspire to conduct financial transactions affecting interstate commerce, to wit: the transfer and delivery of United States currency, which

transactions in fact involved the proceeds of specified unlawful activity, to wit: proceeds from ROGER CALIFANO's illegal gambling business, contrary to New York Penal Law Sections 225.05 and 20.00, knowing that the property involved in the transactions represented the proceeds of some form of unlawful activity, with the intent to promote the carrying on of the specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(A)(i).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

### COUNT SIXTEEN
(Money Laundering Conspiracy – John Doe #8)

206. In or about and between 2008 and 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JOSEPH CARNA, also known as "Junior Lollipops," and REYNOLD MARAGNI, also known as "Ren" and "Reynolds," together with others, did knowingly and intentionally conspire to conduct financial transactions affecting interstate commerce, to wit: the transfer and delivery of United States currency, which transactions in fact involved the proceeds of specified unlawful activity, to wit: proceeds from the illegal gambling business of a cousin of John Doe #8, contrary to New York Penal Law Sections 225.05 and 20.00, knowing that the property involved in the transactions represented the proceeds of some form of unlawful activity, with the intent to

promote the carrying on of the specified unlawful activity,
contrary to Title 18, United States Code, Section
1956(a)(1)(A)(i).

(Title 18, United States Code, Sections 1956(h) and
3551 et seq.)

### COUNT SEVENTEEN
(Extortionate Collection of Credit Conspiracy -
Gambino Individual #2)

207. In or about and between February 2008 and June
2008, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendants DANIEL
CAPALDO, GIUSEPPE DESTEFANO, also known as "Pooch," and ILARIO
SESSA, also known as "Larry," "Fat Larry" and "FL," together with
others, did knowingly and intentionally conspire to participate
in the use of extortionate means to collect and attempt to
collect an extension of credit from Gambino Individual #2.

(Title 18, United States Code, Sections 894(a)(1) and
3551 et seq.)

### COUNT EIGHTEEN
(Extortionate Collection of Credit -
Gambino Individual #2)

208. In or about and between February 2008 and June
2008, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendants DANIEL
CAPALDO, GIUSEPPE DESTEFANO, also known as "Pooch," and ILARIO
SESSA, also known as "Larry," "Fat Larry" and "FL," together with

others, did knowingly and intentionally participate in the use of extortionate means to collect and attempt to collect an extension of credit from Gambino Individual #2.

(Title 18, United States Code, Sections 894(a)(1), 2 and 3551 et seq.)

### COUNT NINETEEN
(Extortionate Extension of Credit Conspiracy)

209. In or about and between February 2008 and June 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants DANIEL CAPALDO and GIUSEPPE DESTEFANO, also known as "Pooch," together with others, did knowingly and intentionally conspire to make one or more extortionate extensions of credit.

(Title 18, United States Code, Section 892(a) and 3551 et seq.)

### COUNT TWENTY
(Extortionate Extension of Credit)

210. In or about and between February 2008 and June 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants DANIEL CAPALDO and GIUSEPPE DESTEFANO, also known as "Pooch," together with others, did knowingly and intentionally make one or more extortionate extensions of credit.

(Title 18, United States Code, Sections 892(a), 2 and 3551 et seq.)

94

<u>COUNT TWENTY-ONE</u>
(Financing Extortionate Extension of Credit)

211.  In or about and between February 2008 and June
2009, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendant DANIEL
CAPALDO, together with others, did knowingly and willfully
advance money and property, as a loan, an investment and pursuant
to a partnership and profit-sharing agreement, to a person, to
wit: GIUSEPPE DESTEFANO, with reasonable grounds to believe that
it was the intention of DESTEFANO to use the money and property
so advanced directly and indirectly for the purpose of making
extortionate extensions of credit.

(Title 18, United States Code, Sections 893, 2 and 3551
<u>et</u> <u>seq</u>.)

<u>COUNT TWENTY-TWO</u>
(Extortionate Collection of Credit Conspiracy - John Doe #9)

212.  In or about and between May 2008 and June 2008,
both dates being approximate and inclusive, within the Eastern
District of New York and elsewhere, the defendants DANIEL BOGAN
and VINCENT FEBBRARO, also known as "Jimmy Gooch," together with
others, did knowingly and intentionally conspire to participate
in the use of extortionate means to collect and attempt to
collect an extension of credit from John Doe #9.

(Title 18, United States Code, Sections 894(a)(1) and
3551 <u>et</u> <u>seq</u>.)

95

<u>COUNT TWENTY-THREE</u>
(Extortionate Collection of Credit - John Doe #9)

213. In or about and between May 2008 and June 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants DANIEL BOGAN and VINCENT FEBRARRO, also known as "Jimmy Gooch," together with others, did knowingly and intentionally participate in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #9.

(Title 18, United States Code, Sections 894(a)(1), 2 and 3551 <u>et</u> <u>seq</u>.)

<u>COUNT TWENTY-FOUR</u>
(Extortionate Extension of Credit Conspiracy)

214. In or about and between June 2008 and September 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANTHONY CALABRO, also known as "Nooch," GAETANO GALLO, also known as "Tommy," THEODORE PERSICO, JR., also known as "Teddy," and "the kid," JACK RIZZOCASCIO, also known as "Jack the Whack," and ANTHONY RUSSO, also known as "Big Anthony," together with others, did knowingly and intentionally conspire to make one or more extortionate extensions of credit.

(Title 18, United States Code, Sections 892(a) and 3551 <u>et</u> <u>seq</u>.)

96

COUNT TWENTY-FIVE
(Extortionate Extension of Credit)

215. In or about and between June 2008 and September 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANTHONY CALABRO, also known as "Nooch," GAETANO GALLO, also known as "Tommy," THEODORE PERSICO, JR., also known as "Teddy" and "the kid," JACK RIZZOCASCIO, also known as "Jack the Whack," and ANTHONY RUSSO, also known as "Big Anthony," together with others, did knowingly and intentionally make one or more extortionate extensions of credit.

(Title 18, United States Code, Sections 892(a), 2 and 3551 et seq.)

COUNT TWENTY-SIX
(Extortionate Collection of Credit Conspiracy)

216. In or about and between June 2008 and September 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANTHONY CALABRO, also known as "Nooch," GAETANO GALLO, also known as "Tommy," THEODORE PERSICO, JR., also known as "Teddy" and "the kid," JACK RIZZOCASCIO, also known as "Jack the Whack," and ANTHONY RUSSO, also known as "Big Anthony," and together with others, did knowingly and intentionally conspire to participate

97

in the use of extortionate means to collect and attempt to
collect one or more extensions of credit.

(Title 18, United States Code, Sections 894(a)(1) and
3551 et seq.)

## COUNT TWENTY-SEVEN
(Extortionate Collection of Credit)

217. In or about and between June 2008 and September
2009, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendants
ANTHONY CALABRO, also known as "Nooch," GAETANO GALLO, also known
as "Tommy," THEODORE PERSICO, JR., also known as "Teddy" and "the
kid," JACK RIZZOCASCIO, also known as "Jack the Whack," and
ANTHONY RUSSO, also known as "Big Anthony," together with others,
did knowingly and intentionally participate in the use of
extortionate means to collect and attempt to collect one or more
extensions of credit.

(Title 18, United States Code, Sections 894(a)(1), 2
and 3551 et seq.)

## COUNT TWENTY-EIGHT
(Extortionate Extension of Credit - John Doe #10)

218. In or about and between August 2008 and August
2009, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendant NICKY

98

RIZZO, together with others, did knowingly and intentionally make an extortionate extension of credit to John Doe #10.

(Title 18, United States Code, Sections 892(a), 2 and 3551 <u>et</u> <u>seq</u>.)

<u>COUNT TWENTY-NINE</u>
(Extortionate Collection of Credit - John Doe #10)

219. In or about and between August 2008 and August 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant NICKY RIZZO, together with others, did knowingly and intentionally participate in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #10.

(Title 18, United States Code, Sections 894(a)(1), 2 and 3551 <u>et</u> <u>seq</u>.)

<u>COUNT THIRTY</u>
(Using, Carrying and Possessing a Firearm)

220. In or about and between May 2009 and June 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOSEPH SAVARESE, together with others, did knowingly and intentionally use and carry a firearm during and in relation to a crime of violence, to wit: the crime charged in Count Two, and did

knowingly and intentionally possess said firearm in furtherance of such crime of violence, which firearm was brandished.

(Title 18, United States Code, Sections 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 2 and 3551 et seq.)

COUNT THIRTY-ONE
(Illegal Gambling – Poker Games and Joker-Poker Machines)

221. In or about and between June 2009 and January 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ROGER CALIFANO, JOHN DUNN, also known as "Johnny Five," and GIOVANNI GALLUZZO, also known as "John," together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business involving poker games and joker-poker machines, which operated in violation of the laws of New York State, to wit: New York Penal Law Sections 225.05 and 20.00, which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation for a period in excess of thirty days and had a gross revenue of at least $2,000 in any single day.

(Title 18, United States Code, Sections 1955(a), 2 and 3551 et seq.)

<u>COUNT THIRTY-TWO</u>
(Illegal Gambling – Sports Betting)

222.   In or about and between September 2009 and
February 2010, both dates being approximate and inclusive, within
the Eastern District of New York and elsewhere, the defendants
ANTHONY RUSSO, also known as "Big Anthony," JOSEPH SAVARESE,
FRANK SENATORE, also known as "Buzz," and JOSEPH VIRZI, together
with others, did knowingly and intentionally conduct, finance,
manage, supervise, direct and own all or part of an illegal
gambling business, to wit: a gambling business involving sports
betting, which operated in violation of the laws of New York
State, to wit: New York Penal Law Sections 225.05 and 20.00,
which involved five or more persons who conducted, financed,
managed, supervised, directed and owned all or part of such
business and which remained in substantially continuous operation
for a period in excess of thirty days and had a gross revenue of
at least $2,000 in any single day.

(Title 18, United States Code, Sections 1955(a), 2 and
3551 <u>et</u> <u>seq</u>.)

<u>COUNT THIRTY-THREE</u>
(Marijuana Distribution Conspiracy)

223.   In or about and between October 2009 and May 2010,
both dates being approximate and inclusive, within the Eastern
District of New York, the defendants ALI JUSEINOSKI, ANTHONY
RUSSO also known as "Big Anthony," and JOSEPH SAVARESE, together

with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute a controlled substance, which offense involved a substance containing marijuana, a Schedule I controlled substance, contrary to Title 21, United States Code, Section 841(a)(1).

(Title 21, United States Code, Sections 846 and 841(b)(1)(D); Title 18, United States Code, Sections 3551 <u>et seq</u>.)

## COUNT THIRTY-FOUR
(Extortionate Collection of Credit Conspiracy - John Doe #21)

224. In or about and between December 2009 and March 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOSEPH SAVARESE, together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #21.

(Title 18, United States Code, Sections 894(a)(1) and 3551 <u>et seq</u>.)

## COUNT THIRTY-FIVE
(Wire Fraud Conspiracy - Figli di Santa Rosalia)

225. On or about and between December 16, 2009 and November 18, 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANGELO SPATA, also known as "Little Angelo," together

with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, to wit: emails and faxes concerning an application for a permit for the annual Figli di Santa Rosalia, contrary to Title 18, United States Code, Section 1343.

226. The allegations contained in paragraph 81 are realleged and incorporated as if fully set forth in this paragraph.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

<u>COUNT THIRTY-SIX</u>
(Wire Fraud - Figli di Santa Rosalia)

227. On or about and between December 16, 2009 and November 18, 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANGELO SPATA, also known as "Little Angelo," together with others, did knowingly and intentionally devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and

103

artifice, did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, to wit: emails and faxes concerning an application for a permit for the annual Figli di Santa Rosalia.

228. The allegations contained in paragraph 81 are realleged and incorporated as if fully set forth in this paragraph.

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

<u>COUNT THIRTY-SEVEN</u>
(Illegal Gambling – Poker Games and Joker-Poker Machines)

229. In or about and between March 2010 and July 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ROGER CALIFANO, DENNIS DELUCIA, also known as "Fat Dennis," "Little Dennis" and "the Beard," GIOVANNI GALLUZZO, also known as "John," ANGELO SPATA, also known as "Little Angelo," and LOUIS VENTURELLI, also known as "Louie Ices," together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business involving poker games and joker-poker machines, which operated in violation of the laws of New York State, to wit: New York Penal Law Sections 225.05 and 20.00, which involved five or more persons who conducted, financed,

104

managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation for a period in excess of thirty days and had a gross revenue of at least $2,000 in any single day.

(Title 18, United States Code, Sections 1955(a), 2 and 3551 et seq.)

## COUNT THIRTY-EIGHT
(Extortionate Collection of Credit Conspiracy - John Doe #11)

230. In or about and between March 2010 and January 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants SCOTT FAPPIANO and REYNOLD MARAGNI, also known as "Ren" and "Reynolds," together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #11.

(Title 18, United States Code, Sections 894(a)(1) and 3551 et seq.)

## COUNT THIRTY-NINE
(Interstate Travel in-aid-of Racketeering)

231. On or about and between March 12, 2010 and November 9, 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant REYNOLD MARAGNI, also known as "Ren" and "Reynolds," together with others, did knowingly and intentionally travel in interstate commerce, and use the mail and one or more facilities

in interstate commerce, with intent to promote, manage,
establish, carry on and facilitate the promotion, management,
establishment and carrying on of unlawful activity, to wit: the
bribery of a public servant, in violation of Florida Statute
Section 838.015, and thereafter did perform and attempt to
perform such promotion, management, establishment and carrying
on, and facilitation of the promotion, management, establishment
and carrying on of such unlawful activity.

(Title 18, United States Code, Sections 1952(a)(3)(A),
2 and 3551 <u>et</u> <u>seq</u>.)

COUNT FORTY
(Robbery Conspiracy)

232. In or about and between May 2010 and June 2010,
both dates being approximate and inclusive, within the Eastern
District of New York, the defendants SCOTT FAPPIANO, ANTHONY
RUSSO, also known as "Big Anthony," and JOSEPH SAVARESE, together
with others, did knowingly and intentionally conspire to
obstruct, delay and affect commerce, and the movement of articles
and commodities in commerce by robbery, to wit: the robbery of
one or more persons at a residence in Staten Island, New York of
the proceeds of the sale of a heating oil company.

(Title 18, United States Code, Sections 1951(a) and
3551 <u>et</u> <u>seq</u>.)

106

COUNT FORTY-ONE
(Extortion Conspiracy – Gambino Crime Family)

233. In or about and between May 2010 and August 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANDREW RUSSO, also known as "Mush," BENJAMIN CASTELLAZZO, also known as "Benji," "the Claw" and "the Fang," DENNIS DELUCIA, also known as "Fat Dennis," "Little Dennis" and "the Beard," RICHARD FUSCO, also known as "Richie," and ANTHONY RUSSO, also known as "Big Anthony," together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others agreed to obtain property, to wit: money belonging to the Gambino crime family, from members of the Gambino crime family, with their consent, which consent was to be induced through wrongful use of actual and threatened force, violence and fear.

(Title 18, United States Code, Sections 1951(a) and 3551 et seq.)

COUNT FORTY-TWO
(Felon in Possession of a Firearm)

234. On or about May 5, 2010, within the Eastern District of New York, the defendant GIUSEPPE DESTEFANO, also known as "Pooch," having previously been convicted in a court of a crime punishable by a term of imprisonment exceeding one year,

107

did knowingly and intentionally possess in and affecting commerce a firearm, to wit: a .44 caliber Smith & Wesson revolver.

(Title 18, United States Code, Sections 922(g)(1), 924(a)(2) and 3551 et seq.)

## COUNT FORTY-THREE
(Extortionate Collection of Credit - John Doe #12)

235. In or about and between June 2010 and August 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ALI JUSEINOSKI, together with others, did knowingly and intentionally participate in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #12.

(Title 18, United States Code, Sections 894(a)(1), 2 and 3551 et seq.)

## COUNT FORTY-FOUR
(Extortionate Collection of Credit Conspiracy -
Gambino Individual #3)

236. In or about August 2010, within the Eastern District of New York and elsewhere, the defendants ROGER CALIFANO, ANTHONY RUSSO, also known as "Big Anthony," and ILARIO SESSA, also known as "Larry," "Fat Larry" and "FL," together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to collect and attempt to collect an extension of credit from Gambino Individual #3.

(Title 18, United States Code, Sections 894(a)(1) and 3551 et seq.)

108

<u>COUNT FORTY-FIVE</u>
(Extortionate Collection of Credit -
Gambino Individual #3)

237. In or about August 2010, within the Eastern District of New York and elsewhere, the defendants ROGER CALIFANO and ILARIO SESSA, also known as "Larry," "Fat Larry" and "FL," together with others, did knowingly and intentionally participate in the use of extortionate means to collect and attempt to collect an extension of credit from Gambino Individual #3.

(Title 18, United States Code, Sections 894(a)(1), 2 and 3551 <u>et</u> <u>seq</u>.)

<u>COUNT FORTY-SIX</u>
(Possession of Contraband Cigarettes)

238. In or about and between August 2010 and September 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant REYNOLD MARAGNI, also known as "Ren" and "Reynolds," together with others, did knowingly and intentionally ship, transport, receive, possess, sell, distribute and purchase contraband cigarettes.

(Title 18, United States Code, Sections 2342(a), 2344(a), 2 and 3551 <u>et</u> <u>seq</u>.)

<u>COUNT FORTY-SEVEN</u>
(Extortionate Collection of Credit Conspiracy - John Doe #15)

239. In or about and between September 2010 and January 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants

109

ANTHONY DURSO, also known as "Baby Fat Larry" and "BFL," GIOVANNI GALLUZZO, also known as "John," ANTHONY RUSSO, also known as "Big Anthony," and ILARIO SESSA, also known as "Larry," "Fat Larry" and "FL," together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #15.

(Title 18, United States Code, Sections 894(a)(1) and 3551 et seq.)

<u>COUNT FORTY-EIGHT</u>
(Extortionate Collection of Credit - John Doe #15)

240. In or about and between September 2010 and January 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANTHONY DURSO, also known as "Baby Fat Larry" and "BFL," GIOVANNI GALLUZZO, also known as "John," ANTHONY RUSSO, also known as "Big Anthony," and ILARIO SESSA, also known as "Larry," "Fat Larry" and "FL," together with others, did knowingly and intentionally participate in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #15.

(Title 18, United States Code, Sections 894(a)(1), 2 and 3551 et seq.)

<u>COUNT FORTY-NINE</u>
(Extortionate Collection of Credit Conspiracy
- John Doe #16)

241. In or about and between September 2010 and January 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANDREW RUSSO, also known as "Mush," and ANTHONY RUSSO, also known as "Big Anthony," together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #16.

(Title 18, United States Code, Sections 894(a)(1) and 3551 <u>et</u> <u>seq</u>.)

<u>COUNT FIFTY</u>
(Extortionate Collection of Credit Conspiracy - John Doe #17)

242. In or about and between September 2010 and January 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANTHONY RUSSO, also known as "Big Anthony," and ILARIO SESSA, also known as "Larry," "Fat Larry" and "FL," together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #17.

(Title 18, United States Code, Sections 894(a)(1) and 3551 <u>et</u> <u>seq</u>.)

111

<u>COUNT FIFTY-ONE</u>
(Extortionate Collection of Credit - John Doe #17)

243. In or about and between September 2010 and January 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANTHONY RUSSO, also known as "Big Anthony," and ILARIO SESSA, also known as "Larry," "Fat Larry" and "FL," together with others, did knowingly and intentionally participate in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #17.

(Title 18, United States Code, Sections 894(a)(1), 2 and 3551 <u>et</u> <u>seq</u>.)

<u>COUNT FIFTY-TWO</u>
(Extortionate Collection of Credit Conspiracy - John Doe #18)

244. In or about and between September 2010 and January 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANTHONY RUSSO, also known as "Big Anthony," and ILARIO SESSA, also known as "Larry," "Fat Larry" and "FL," together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #18.

(Title 18, United States Code, Sections 894(a)(1) and 3551 <u>et</u> <u>seq</u>.)

112

<u>COUNT FIFTY-THREE</u>
(Extortionate Collection of Credit - John Doe #18)

245. In or about and between September 2010 and January 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANTHONY RUSSO, also known as "Big Anthony," and ILARIO SESSA, also known as "Larry," "Fat Larry" and "FL," together with others, did knowingly and intentionally participate in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #18.

(Title 18, United States Code, Sections 894(a)(1), 2 and 3551 <u>et</u> <u>seq</u>.)

<u>COUNT FIFTY-FOUR</u>
(Marijuana Distribution Conspiracy)

246. In or about and between September 2010 and January 2011, both dates being approximate and inclusive, within the Eastern District of New York, the defendants JOSEPH DIMARCO, REYNOLD MARAGNI, also known as "Ren" and "Reynolds," and VITO VIZZI, together with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute a controlled substance, which offense involved a substance

113

containing marijuana, a Schedule I controlled substance, contrary

to Title 21, United States Code, Section 841(a)(1).

        (Title 21, United States Code, Sections 846 and

841(b)(1)(D); Title 18, United States Code, Sections 3551 et

seq.)

### COUNT FIFTY-FIVE
(Extortionate Collection of Credit Conspiracy - John Doe #19)

        247. In or about and between November 2010 and January

2011, both dates being approximate and inclusive, within the

Eastern District of New York and elsewhere, the defendants

REYNOLD MARAGNI, also known as "Ren" and "Reynolds," and ANTHONY

RUSSO, also known as "Big Anthony," together with others, did

knowingly and intentionally conspire to participate in the use of

extortionate means to collect and attempt to collect an extension

of credit from John Doe #19.

        (Title 18, United States Code, Sections 894(a)(1) and

3551 et seq.)

### COUNT FIFTY-SIX
(Receipt of Stolen Property Conspiracy)

        248. In or about June 2010, within the Eastern District

of New York and elsewhere, the defendant FRANK PONTILLO, also

known as "Frankie Steel," together with others, did knowingly and

willfully conspire to (1) receive, possess, conceal, store,

barter, sell and dispose of goods, wares and merchandise, of a

value of $5,000 or more, which goods, wares and merchandise had

114

crossed a State boundary after being stolen, unlawfully converted and taken, knowing the same to have been stolen, unlawfully converted and taken, contrary to Title 18, United States Code, Section 2315, and (2) transport, transmit and transfer in interstate and foreign commerce goods, wares and merchandise, of a value of $5,000 or more, knowing the same to have been stolen, unlawfully converted and taken by fraud, contrary to Title 18, United States Code, Section 2314.

249. In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendant FRANK PONTILLO, also known as "Frankie Steel," together with others, committed and caused the commission of, among others, the following:

<u>OVERT ACTS</u>

(a)  On or about June 9, 2010, the defendant FRANK PONTILLO, also known as "Frankie Steel," together with others, met John Doe #22, an individual whose identity is known to the Grand Jury, in New Jersey.

(b)  At the June 9, 2010 meeting in New Jersey, the defendant FRANK PONTILLO, also known as "Frankie Steel," together with others, took possession of purportedly stolen electronics and loaded the electronics into a vehicle.

(c)  At the June 9, 2010 meeting in New Jersey, the defendant FRANK PONTILLO, also known as "Frankie Steel,"

together with others, transported the purportedly stolen
electronics from New Jersey to Staten Island, New York.

        (Title 18, United States Code, Sections 371 and 3551
et seq.)

### COUNT FIFTY-SEVEN
(Illegal Gambling – Sports Betting)

        250. In or about September 2010, within the Eastern
District of New York and elsewhere, the defendants JOSEPH
SAVARESE and HECTOR PAGAN, also known as "Junior," together with
others, did knowingly and intentionally conduct, finance, manage,
supervise, direct and own all or part of an illegal gambling
business, to wit: a gambling business involving bookmaking, which
operated in violation of the laws of New York State, to wit: New
York Penal Law Sections 225.05 and 20.00, which involved five or
more persons who conducted, financed, managed, supervised,
directed and owned all or part of such business and which
remained in substantially continuous operation for a period in
excess of thirty days and had a gross revenue of at least $2,000
in any single day.

        (Title 18, United States Code, Sections 1955(a), 2 and
3551 et seq.)

### COUNT FIFTY-EIGHT
(Possession of Contraband Cigarettes)

        251. In or about and between October 2010 and December
2010, both dates being approximate and inclusive, within the

116

Eastern District of New York and elsewhere, the defendants JOHN MAGGIO and RALPH ARPAIO, together with others, did knowingly and intentionally ship, transport, receive, possess, sell, distribute and purchase contraband cigarettes.

(Title 18, United States Code, Sections 2342(a), 2344(a), 2 and 3551 <u>et</u> <u>seq</u>.)

<u>COUNT FIFTY-NINE</u>
(Using, Carrying and Possessing a Firearm)

252. On or about and between December 5, 2010 and December 7, 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants BENJAMIN CASTELLAZZO, also known as "Benji," "the Claw" and "the Fang," EMANUELE FAVUZZA, also known as "Manny," and ANTHONY RUSSO, also known as "Big Anthony," together with others, did knowingly and intentionally use and carry a firearm during and in relation to a crime of violence, to wit: the crime charged in Count One, and did knowingly and intentionally possess said firearm in furtherance of such crime of violence, which firearm was brandished.

(Title 18, United States Code, Sections 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 2 and 3551 <u>et</u> <u>seq</u>.)

117

<u>COUNT SIXTY</u>
(Using, Carrying and Possessing a Firearm)

253. On or about and between December 5, 2010 and December 7, 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ILARIO SESSA, also known as "Larry," "Fat Larry" and "FL," together with others, did knowingly and intentionally use and carry a firearm during and in relation to a crime of violence, to wit: the crime charged in Count Two, and did knowingly and intentionally possess said firearm in furtherance of such crime of violence, which firearm was brandished.

(Title 18, United States Code, Sections 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 2 and 3551 <u>et</u> <u>seq</u>.)

<u>FORFEITURE ALLEGATION AS TO COUNTS ONE AND TWO</u>

254. The United States hereby gives notice to the defendants charged in Counts One and Two that, upon conviction of any such offense, the government will seek forfeiture, in accordance with Title 18, United States Code, Section 1963(a), which requires any person convicted of such offenses to forfeit: (a) any interest the person acquired or maintained in violation of Title 18, United States Code, Section 1962; (b) any interest in, security of, claims against or property or contractual right of any kind affording a source of influence over any enterprise which the person has established, operated, controlled, conducted or participated in the conduct of, in violation of Title 18,

118

United States Code, Section 1962; and (c) any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity, in violation of Title 18, United States Code, Section 1962.

255.  If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)  cannot be located upon the exercise of due diligence;

(b)  has been transferred or sold to, or deposited with, a third party;

(c)  has been placed beyond the jurisdiction of the court;

(d)  has been substantially diminished in value; or

(e)  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m), to seek forfeiture of any other property of such defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 1963(a) and 1963(m))

FORFEITURE ALLEGATION AS TO COUNTS THREE THROUGH SIX, SEVENTEEN
THROUGH TWENTY-NINE, THIRTY-FOUR THROUGH THIRTY-SIX, THIRTY-EIGHT
THROUGH FORTY-ONE, FORTY-THREE THROUGH FIFTY-THREE, FIFTY-FIVE
THROUGH FIFTY-SIX AND FIFTY-EIGHT

256.  The United States hereby gives notice to the
defendants charged in Counts Three through Six, Seventeen through
Twenty-nine, Thirty-four through Thirty-six, Thirty-eight through
Forty-one, Forty-three through Fifty-three, Fifty-five through
Fifty-six and Fifty-eight that, upon conviction of any such
offense, the government will seek forfeiture, in accordance with
Title 18, United States Code, Section 981(a)(1)(C) and Title 28,
United States Code, Section 2461(c), which require any person
convicted of such offenses to forfeit any property constituting
or derived from proceeds obtained directly or indirectly as a
result of such offenses.

257. If any of the above-described forfeitable
property, as a result of any act or omission of the defendants:

(a)  cannot be located upon the exercise of due
diligence;

(b)  has been transferred or sold to, or deposited
with, a third party;

(c)  has been placed beyond the jurisdiction of
the court;

(d)  has been substantially diminished in value;
or

(e)  has been commingled with other property which
cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21,
United States Code, Section 853(p), as incorporated by Title 28,
United States Code, Section 2461(c), to seek forfeiture of any
other property of such defendants up to the value of the
forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C);
Title 21, United States Code, Section 853(p); Title 28, United
States Code, Section 2461(c))

## FORFEITURE ALLEGATION AS TO COUNTS SEVEN, FIFTEEN AND SIXTEEN

258.  The United States hereby gives notice to the
defendants charged in Counts Seven, Fifteen and Sixteen that,
upon conviction of any such offense, the government will seek
forfeiture, in accordance with Title 18, United States Code,
Section 982(a), of all property involved in each offense of
conviction in violation of Title 18, United States Code, Section
1956, or conspiracy to commit such offenses, and all property
traceable to such property.

259. If any of the above-described forfeitable
property, as a result of any act or omission of the defendants:

(a)   cannot be located upon the exercise of due diligence;

(b)   has been transferred or sold to, or deposited with, a third party;

(c)   has been placed beyond the jurisdiction of the court;

(d)   has been substantially diminished in value; or

(e)   has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), to seek forfeiture of any other property of such defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 982)

FORFEITURE ALLEGATION AS TO COUNTS EIGHT, NINE, THIRTY-THREE AND FIFTY-FOUR

260. The United States hereby gives notice to the defendants charged in Counts Eight, Nine, Thirty-three and Fifty-four that, upon conviction of any such offense, the government will seek forfeiture in accordance with Title 21, United States Code, Section 853(a), which requires any person convicted of such offenses to forfeit any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such offenses, and any property used, or intended to be used, in any

122

manner or part, to commit, or to facilitate the commission of such offenses.

261. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)  cannot be located upon the exercise of due diligence;

(b)  has been transferred or sold to, or deposited with, a third party;

(c)  has been placed beyond the jurisdiction of the court;

(d)  has been substantially diminished in value; or

(e)  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of such defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 21, United States Code, Sections 853(a) and 853(p))

## FORFEITURE ALLEGATION AS TO COUNTS TEN THROUGH FOURTEEN

262. The United States hereby gives notice to the defendants charged in Counts Ten through Fourteen that, upon conviction of any such offense, the government will seek

forfeiture in accordance with Title 18, United States Code, Section 982(a)(2)(A), which requires any person convicted of such offenses to forfeit any property constituting or derived from proceeds obtained directly or indirectly as a result of such offenses.

263.  If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)  cannot be located upon the exercise of due diligence;

(b)  has been transferred or sold to, or deposited with, a third party;

(c)  has been placed beyond the jurisdiction of the court;

(d)  has been substantially diminished in value; or

(e)  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of such defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 982(a)(2)(A); Title 21, United States Code, Section 853(p))

FORFEITURE ALLEGATION AS TO COUNTS THIRTY,
<u>FORTY-TWO, FIFTY-NINE AND SIXTY</u>

264. The United States hereby gives notice to the
defendants charged in Counts Thirty, Forty-two, Fifty-nine and
Sixty that, upon conviction of any such offense, the government
will seek forfeiture in accordance with Title 18, United States
Code, Section 924(d) and Title 28, United States Code, Section
2461(c), which require the forfeiture of any firearm or
ammunition involved in or used in any knowing violation of Title
18, United States Code, Sections 922(g) or Section 924.

265.  If any of the above-described forfeitable
property, as a result of any act or omission of the defendants:

(a)  cannot be located upon the exercise of due
diligence;

(b)  has been transferred or sold to, or deposited
with, a third party;

(c)  has been placed beyond the jurisdiction of
the court;

(d)  has been substantially diminished in value;
or

(e)  has been commingled with other property which
cannot be divided without difficulty;
it is the intent of the United States, pursuant to Title 21,
United States Code, Section 853(p), as incorporated by Title 28,
United States Code, Section 2461(c), to seek forfeiture of any

other property of such defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 28, United States Code, Section 2461(c); Title 18, United States Code, Section 924(d); Title 21, United States Code, Section 853(p))

### FORFEITURE ALLEGATION AS TO COUNTS THIRTY-ONE, THIRTY-TWO, THIRTY-SEVEN AND FIFTY-SEVEN

266. The United States hereby gives notice to the defendants charged in Counts Thirty-one, Thirty-two, Thirty-seven and Fifty-seven that, upon conviction of any such offense, the government will seek forfeiture in accordance with: (a) Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property constituting or derived from proceeds obtained directly or indirectly as a result of such offenses; and (b) Title 18, United States Code, Section 1955(d), which requires any person convicted of such offense to forfeit any property, including money, used in violation of Title 18, United States Code, Section 1955.

267. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c)   has been placed beyond the jurisdiction of the court;

(d)   has been substantially diminished in value; or

(e)   has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of such defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 28, United States Code, Section 2461(c); Title 18, United States Code, Sections 981(a)(1)(C) and 1955(d); Title 21, United States Code, Section 853(p))

A TRUE BILL

_____
FOREPERSON

_____
LORETTA E. LYNCH
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

127

F. # 2005R01875
FORM DBD-34

CR. No.

# UNITED STATES DISTRICT COURT

## EASTERN District of *NEW YORK*

### CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

*vs.*

ANDREW RUSSO, <u>et al.</u>,

Defendants.

# I N D I C T M E N T

Cr. No. _____

(T. 18, U.S.C., §§ 371, 892(a), 893, 894(a)(1), 922(g)(1), 924(a)(2), 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 924(d), 981(a)(1)(C), 982, 982(a)(2)(A), 1343, 1349, 1951(a), 1952(a), 1955(a), 1956(h), 1962(d), 1963, 1963(a), 1963(m), 2342(a), 2344(a), 2 and 3551 et seq.; T. 21, U.S.C., §§ 841(a)(1), 841(b)(1)(D), 846, 853(a), 853(p); T. 28, U.S.C., § 2461(c))

*A true bill.*

_____
                        *Foreman*

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 19* ____

_____
                        *Clerk*

*Bail. $* _____

ELIZABETH GEDDES, AUSA (718) 254-6430