

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

---

AB:EAG/AL                         *271 Cadman Plaza East*
F. #2010R00153                    *Brooklyn, New York  11201*


March 11, 2011

The Honorable Kiyo A. Matsumoto
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York  11201

>  Re:  United States v. Andrew Russo, et al.
>       Criminal Docket No. 11 CR 30 (KAM)

Dear Judge Matsumoto:

On February 3, 2011, the government filed a letter notifying the Court of certain potential attorney conflicts of interest that had come to the government's attention in the above-captioned case.  Following the government's February 3, 2011 letter, the Court ordered defense counsel to notify the Court of any additional potential attorney conflicts.  See ECF Docket Entry No. 250.  Having now received information about additional potential conflicts of interest, the government respectfully submits this letter to supplement its February 3, 2011 letter notifying the Court of the potential attorney conflicts of interest that, to date, have come to the government's attention in the above-captioned case.

I.   Introduction

At present, the government is aware of potential conflicts of interest that arise from the following circumstances:

   A.   The following attorneys currently jointly represent defendants in this case:

        1.   Vincent Romano, Esq. represents defendants Ralph Arpaio, Daniel Capaldo, John Maggio and Ilario Sessa.

  2. Joseph Mure, Esq. represents defendants John Azzarelli and Nicky Rizzo.[1]

B. The following attorney currently represents defendants in this case and previously represented a different defendant in this case. Vincent Romano, Esq. represents defendants Arpaio, Capaldo, Maggio and Sessa and previously represented defendant Gaetano Gallo.

C. The following attorney currently represents a defendant in this case and represents a different defendant in another pending criminal case. Joseph Corozzo, Esq. represents defendant Angelo Spata in this case and represents defendant Theodore Persico, Jr., in United States v. Theodore Persico, No. 10 CR 147 (SLT) (E.D.N.Y.).

D. The following attorneys currently represent a defendant in this case and previously represented a different defendant in a prior criminal case:

  1. Jeremy Orden, Esq. represents defendant Anthony Durso in this case and represented defendant Michael Castellano in United States v. Michael Castellano, No. 01 CR 186 (LMM) (S.D.N.Y.).

  2. Ephraim Savitt, Esq. represents defendant Emanuele Favuzza in this case and represented defendant Larry Sessa in United States v. Sessa, No. 95 CR 1155 (RR) (E.D.N.Y.).

  3. Joseph Mure, Esq. represents defendants John Azzarelli and Nicky Rizzo in this case and represented defendant Anthony Calabro in United States v. Castellano, No. 01 M 95 (UA) (S.D.N.Y.) and defendant Scott Fappiano in a New York state case.

  4. Alan Futerfas, Esq. represents defendant John Dunn in this case and represented defendant Dennis Delucia in United States v. Delucia, No. 90 CR 446 (FB) (E.D.N.Y.), and United States v. Delucia, No. 93 CR 1231 (ARR) (E.D.N.Y.).

---

[1] Although John Rapawy, Esq. has filed a notice of appearance to represent defendant Azzarelli, Mr. Mure has advised that he intends to represent both defendants Azzarelli and Rizzo.

  5. Sanford Talken, Esq. represents defendant Roger Califano and previously represented defendant Giovanni Galluzzo in a New York state case.

E. A number of attorneys currently represent defendants in this case and represent or previously represented members or associates of the Colombo organized crime family in other cases.

F. The following attorneys currently represent a defendant in this case and, in a prior case, previously represented an individual who may testify at trial:

  1. Lee Ginsburg, Esq. represents defendant Frank Senatore in this case and, in United States v. Gioeli et al., No. 08 CR 240 (BMC) (E.D.N.Y.), represented an individual, who is now cooperating with the government and is expected to testify at trial in this case.

  2. Bettina Schein, Esq. represents defendant John Dunn in this case and, in United States v. Sessa et al., No. 95 CR 1155 (RR) (E.D.N.Y.), represented an individual, who is now cooperating with the government and is expected to testify at trial in this case.

  3. Joseph Corozzo, Esq. represents defendant Angelo Spata in this case and, in United States v. Souza et al., No. 06 CR 806 (SLT) (E.D.N.Y.), represented an individual, who is now cooperating with the government and is expected to testify at trial in this case, though not directly against this defendant.

  4. James Froccaro, Esq. represents defendant Reynold Maragni in this case and, in United States v. Gioeli et al., No. 08 CR 240 (BMC) (E.D.N.Y.), represented an individual, who is now cooperating with the government and is expected to testify at trial in this case, though not directly against this defendant.

  5. Harlan Protass, Esq. represents defendant Scott Fappiano in this case and previously represented an individual who may testify at trial in this case.

As set forth below, these circumstances present potential conflicts of interest. While it does not appear that any of the conflicts require disqualification of counsel, the government advises the Court of these circumstances in accordance with Rule 44(c) of the Federal Rules of Criminal Procedure and pursuant to its obligation under Second Circuit law so the Court may conduct the appropriate inquiry pursuant to United States v. Curcio, 680 F.2d 881, 888-90 (2d Cir. 1982). See, e.g., United States v. Stantini, 85 F.3d 9, 13 (2d Cir. 1996); United States v. Malpiedi, 62 F.3d 465, 467 (2d Cir. 1995).

II.  Applicable Law

   A.  Overview

   The Sixth Amendment affords a criminal defendant the right to effective assistance of counsel. See Wood v. Georgia, 450 U.S. 261, 271 (1981); United States v. Perez, 325 F.3d 115, 124 (2d Cir. 2003). That right, however, is not absolute and does not guarantee the defendant counsel of his own choosing. See United States v. Jones, 381 F.3d 114, 119 (2d Cir. 2004); United States v. Locascio, 6 F.3d 924, 931 (2d Cir. 1993). While there is a "presumption in favor of the [defendant's] chosen counsel, such presumption will be overcome by a showing of an actual conflict or a potentially serious conflict." Jones, 381 F.3d at 119 (citing Locascio, 6 F.3d at 931); see also Wheat v. United States, 486 U.S. 153, 164 (1988).

   To determine if the defendant's counsel is burdened by a conflict of interest, the court "must investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." United States v. Levy, 25 F.3d 146, 153 (2d Cir. 1994). An actual conflict exists "when the attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action, or when the attorney's representation of the defendant is impaired by loyalty owed to a prior client." Jones, 381 F.3d at 119 (internal quotation marks and citations omitted). A potential conflict arises if "the interests of the defendant could place the attorney under inconsistent duties in the future." Id. (emphasis and citations omitted). If the attorney suffers from an actual or potential conflict of such a serious nature that no rational defendant would knowingly and intelligently desire that attorney's representation, the court must disqualify that attorney. See United States v. Lussier, 71 F.3d 456, 461-62 (2d Cir. 1995).

Regardless of the severity of the conflict, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Wheat, 486 U.S. at 160. "The question of [attorney] disqualification therefore implicates not only the Sixth Amendment right to the accused, but also the interests of the courts in preserving the integrity of the process and the government's interests in ensuring a just verdict and a fair trial." Locascio, 6 F.3d at 931. Accordingly, "a district court should decline to permit a defendant to be represented by the counsel of his choice if that representation would undermine the integrity of the judicial process." United States v. DiPietro, No. 02 CR 1237 (SWK), 2004 WL 613073, at *4 (S.D.N.Y. Mar. 29, 2004) (citing Wheat, 486 U.S. at 163).

B. Joint Representation

"Rule 44(c) establishes a procedure for avoiding the occurrence of events which might otherwise give rise to a plausible post-conviction claim that because of joint representation the defendants in a criminal case were deprived of their Sixth Amendment right to the effective assistance of counsel." United States v. Aiello, 814 F.2d 109, 112-13 (2d Cir. 1987) (quoting Fed. R. Crim. P. 44 advisory committee notes (1979 amendment)).

Under Rule 44(c)(1), joint representation occurs when "two or more defendants have been charged jointly under Rule 8(b) or have been joined for trial under Rule 13" and "the defendants are represented by the same counsel, or counsel who are associated in law practice." When this occurs, "[t]he court must promptly inquire about the propriety of joint representation and must personally advise each defendant of the right to the effective assistance of counsel, including separate representation." Fed. R. Crim. P. 44(c)(2); see also United States v. Gambino, No. 96-1269, 1997 WL 32807, at *1 (2d Cir. Jan. 9, 1997) (unpublished opinion) (Rule 44(c) requires "a district court to inquire into the possibility of conflict of interest when co-defendants are represented by the same counsel." (citing Levy, 25 F.3d at 153 n.6)).

"To fulfill this so-called 'inquiry' obligation, the court must investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from any conflict." Gambino, 1997 WL 32807, at *1 (citing Levy, 25 F.3d at 153). In doing so, the court is generally entitled to rely on the representations of defense counsel that no conflict

exists, even if those representations later turn out to be incorrect. See id. (citing Levy, 25 F.3d at 154). "Unless there is good cause to believe that no conflict of interest is likely to arise, the court must take appropriate measures to protect each defendant's right to counsel." Fed. R. Crim. P. 44(c)(2).

Rule 44(c) "does not eliminate the defendant's power to waive his right to be represented by a conflict-free attorney." Curcio, 680 F.2d at 887. "Given the constitutional dimension of the defendant's right to counsel of his own choosing, if the defendant makes a knowing and intelligent election to pursue that right in preference to his right to an attorney of undivided loyalty, disqualification would not protect the Sixth Amendment right that the defendant asserts and would not be 'appropriate.'" Id. at 888.

C. Prior Representation

An attorney's prior representation of a co-defendant or a government witness presents an inherent conflict of interest. See Locascio, 6 F.3d at 931; United States v. Ioizzo, 786 F.2d 52, 57 (2d Cir. 1986); Restatement (Third) of the Law Governing Lawyers § 121 (2000) (recognizing that a serious problem arises when "there is a substantial risk that the lawyer's representation of the client would be materially and adversely affected by . . . the lawyer's duties to . . . a former client . . . ."). This is because a lawyer owes an absolute duty of loyalty and confidentiality to his former client. See United States v. Yannotti, 358 F. Supp. 2d 289, 295 (S.D.N.Y. 2004); United States v. Rahman, 861 F. Supp. 266, 274 (S.D.N.Y. 1994); ABA Model Code of Professional Responsibility, Ethical Consideration 4-6. That duty, which remains in force even after representation ends, precludes the lawyer from disclosing matters revealed to him by reason of the confidential relationship, absent release from that duty under the law. See Rahman, 861 F. Supp. at 274; EC 4-6 (stating, "The obligation to protect confidences and secrets of a client continues after the termination of employment.").

That means that a lawyer cannot use privileged information obtained from his former client during prior representation that would adversely affect that client in the present proceeding. See United States v. James, 708 F.2d 40, 45-46 (2d Cir. 1983); United States v. Cunningham, 672 F.2d 1064, 1072-73 (2d Cir. 1982). Thus, in representing his current client, a lawyer cannot attack his former client through cross-examination or argument to the jury. See United States v. Pizzonia, 415 F. Supp. 2d 168, 177-78 (E.D.N.Y. 2006);

Rahman, 861 F. Supp. at 277; United States v. Massino, 303 F. Supp. 2d 258, 262 (E.D.N.Y. 2003) ("Because of [the attorney's] prior representation of [the cooperating witness], [the attorney] cannot ethically cross-examine [the cooperating witness] without his consent."); United States v. Falzone, 766 F. Supp. 1265, 1275 (W.D.N.Y. 1991) (finding it improper for an attorney to cross-examine his prior client because the attorney is in a position to use information gleaned from the prior representation "either purposely or inadvertently").

This effectively precludes a lawyer from vigorously cross-examining his former client or commenting on his credibility, which may be essential to the effective representation of his current client. See United States v. Kelly, 870 F.2d 854, 856-57 (2d Cir. 1989) (finding disqualification necessary because the defendant's interests would best be served by "vigorous cross-examination of the informant in a manner wholly inconsistent with the informant's interests" -- a task that defense counsel could not perform without "violat[ing] the rights of the informant" to expect continued loyalty and confidentiality from his former attorney); United States v. Malpiedi, 62 F.3d 465, 469 (2d Cir. 1995) (finding that the lawyer was prohibited from seeking to "conduct a thorough, no-holds-barred cross-examination . . . because of [the lawyer's] obligations as [the witness's] prior attorney").

Where representation of a former client is substantially related to representation of the current client -- i.e., involving the same subject matter -- the Second Circuit has found an actual conflict of interest. See, e.g., Malpiedi, 62 F.3d at 467 (reversing the guilty verdict because the defendant's attorney represented a government witness during the grand jury proceeding in the same case); Ciak v. United States, 59 F.3d 296, 304 (2d Cir. 1995) (reversing the guilty verdict because the defendant's attorney represented a government witness in a related forfeiture proceeding), abrogated on other grounds by Mickens v. Taylor, 535 U.S. 162 (2002); James, 708 F.2d at 46 (affirming disqualification of an attorney who formerly represented the head of a narcotics organization in a related case, finding "that the present issues are substantially related to the subject matter of the past representation, and that defense counsel quite likely have received confidential information from the witness" such that "even the constitutional dimension of a criminal defendant's right to counsel of his choice does not give the defendant the right to take advantage of his preferred attorney's confidential knowledge gained from prior representation of the witness."). Where the prior representation of a witness involves substantially related representations, the

8

danger of divided loyalties or revealing client confidence is at a maximum.  See Pizzonia, 415 F. Supp. 2d at 178.

    D.   Curcio Waiver

If the conflict is such that a rational defendant could knowingly and intelligently choose to continue to be represented by the conflicted attorney, the Court must obtain directly from the defendant a valid waiver in accordance with the procedures set forth in Curcio.  See, e.g., Malpiedi, 62 F.3d at 470; Levy, 25 F.3d at 153; Iorizzo, 786 F.2d at 58-59.  In summarizing the Curcio procedures, the Second Circuit has instructed the trial court to:

> (i) advise the defendant of the dangers arising from the particular conflict;
> (ii) determine through questions that are likely to be answered in narrative form whether the defendant understands those risks and freely chooses to run them; and
> (iii) give the defendant time to digest and contemplate the risks after encouraging him or her to seek advice from independent counsel.

Iorizzo, 786 F.2d at 59; see also Curcio, 680 F.2d at 888-90.  By routinely relying on waivers of potential conflict claims, courts are spared from having to wade into the intricacies of those claims.  See United States v. Jiang, 140 F.3d 124, 128 (2d Cir. 1998).

The need for a Curcio hearing exists regardless of whether a case is disposed of by way of guilty plea or trial.  "A claim that counsel is conflicted is in essence a claim of ineffective assistance of counsel."  Stantini, 85 F.3d at 15.  Likewise, "[e]ffective assistance of counsel includes counsel's informed opinion as to what pleas should be entered."  Boria v. Keane, 99 F.3d 492, 497 (2d Cir. 1996).  Therefore, it necessarily follows that a defendant has a right to conflict-free representation during the plea negotiation stage.  See id. (explaining, "'prior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered.'" (quoting Von Moltke v. Gillies, 332 U.S. 708, 721 (1948) (emphasis added))); see also Stantini, 85 F.3d at 16-17 (suggesting that ineffective assistance of counsel may be shown if attorney's dual

representation led to inadequate advice "with respect to the advantages or disadvantages of a plea").

III. Discussion

The joint representation of the following defendants by their respective attorneys presents potential conflicts of interest: (1) defendants Arpaio, Capaldo, Maggio and Sessa by Mr. Romano; and (2) defendants Azzarelli and Rizzo by Mr. Mure.  The prior representation of the defendant Gallo by Mr. Romano (who currently represents defendants Arpaio, Capaldo, Maggio and Sessa).

The prior representation of the following defendants by the identified attorneys in other criminal cases, as well as the prior representation of other members or associates of the Colombo organized crime family in other cases, presents potential conflicts of interest: (1) defendant Persico by Mr. Corozzo (who currently represents defendant Spata); (2) defendant Castellano by Mr. Orden (who currently represents defendant Durso); (3) defendant Sessa by Mr. Savitt (who currently represents defendant Favuzza); (4) defendants Calabro and Fappiano by Mr. Mure (who currently represents defendants Azzarelli and Rizzo); (5) defendant Galluzzo by Mr. Talken (who currently represents defendant Califano); and (6) defendant Delucia by Mr. Futerfas (who currently represents defendant Dunn).

The prior representation of potential government witnesses by the identified attorneys in the following cases presents potential conflicts of interest: (1) United States v. Gioeli, et al., No. 08 CR 240 (BMC) (E.D.N.Y.), by Mr. Ginsburg (who currently represents defendant Senatore) and by Mr. Froccaro (who currently represents defendant Maragni); (2) United States v. Sessa, et al., No. 95 CR 1155 (BMC) (E.D.N.Y.), by Ms. Schein (who currently represents defendant Dunn); (3) United States v. Souza, et al., No. 06 CR 806 (SLT) (E.D.N.Y.), by Mr. Corozzo (who currently represents defendant Spata); (4) the prior representation of a potential government witness by Mr. Protass (who currently represents defendant Fappiano).  While the government witness who Mr. Ginsburg previously represented is expected to testify at trial and his testimony is expected to implicate defendant Senatore, who Mr. Ginsburg currently represents, Mr. Ginsburg has indicated that Senatore agrees to waive his right to have Mr. Ginsburg cross-examine the witness or

comment on his credibility at trial.[2]  Similarly, while the witness who Mr. Protass previously represented may testify at trial and his testimony is expected to implicate defendant Fappiano, who Mr. Protass currently represents, Mr. Protass has indicated that Fappiano agrees to waive his right to have Mr. Protass cross-examine the witness or comment on his credibility at trial.[3]  The government witness who Ms. Schein previously represented is expected to testify at trial and his testimony is expected to implicate defendant Dunn, who Ms. Schein currently represents; Ms. Schein has not indicated whether Dunn agrees to waive his right to have Ms. Schein cross-examine the witness or comment on his credibility at trial.[4]  Lastly, while Mr. Froccaro and Mr. Corozzo represented, in prior cases, government witnesses, who are expected to testify at trial, the testimony of those witnesses are not expected to respectively implicate defendant Maragni, who Mr. Foccaro represents, or defendant Spata, who Mr. Corozzo currently represents.

In light of the joint or prior representation of those defendants, and current or prior representation of those government witnesses, the identified attorneys may possess privileged information that could be helpful in defending their respective clients but that those attorneys are ethically precluded from disclosing or using in their defense.  See DR 4-101(B) (providing: "Except when permitted under DR 4-101(C), a lawyer shall not knowingly: (1) Reveal a confidence or secret of a client.  (2) Use a confidence or secret of a client to the disadvantage of the client.  (3) Use a confidence or secret of a client for the advantage of the lawyer or of a third person, unless the client consents after full disclosure."); EC 4-6 (making it clear that "[t]he obligation to protect confidences

---

[2]   Should the Court refuse to accept the waiver of defendant Senatore, it is the government's position that Mr. Ginsburg's prior representation of the government witness requires his disqualification.

[3]   Should defendant Dunn waive these rights and the Court refuse to accept the waiver of Dunn, it is the government's position that Ms. Schein's prior representation of the government witness requires her disqualification.

[4]   Should the Court refuse to accept the waiver of defendant Fappiano, it is the government's position that Mr. Protass's prior representation of a potential government witness requires his disqualification.

11

and secrets of a client continues after the termination of employment.").

The current or prior representation of the identified defendants and government witnesses could present a conflict of interest for the attorneys to investigate leads, introduce evidence or make arguments on their clients behalf that might tend to incriminate or cast suspicion on their current or former clients. See DR 5-108(A)(1) (providing: "Except with the consent of a former client after full disclosure a lawyer who has represented the former client in a matter shall not . . . [t]hereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client.").

In that regard, the potential for conflict is especially acute with respect to defendants being jointly represented by the same attorney in this case or defendants whose attorney previously represented co-defendants or government witnesses. That representation may limit the attorneys' ability to cross-examine or otherwise comment on the credibility of their current or former clients should they testify at trial. For example, if that testimony is important to the government's proof at trial, the defense may be hindered if an attorney is unable to vigorously cross-examine the witness or attack his credibility because of the attorney's obligations to his current or former client.

Notwithstanding those limitations, a defendant can generally waive potential conflicts arising from his attorney's current or prior representation of a co-defendant or government witness. See Perez, 325 F.3d at 124 (citing United States v. Fulton, 5 F.3d 605, 613 (2d Cir. 1993)). The Second Circuit has recognized that "[o]ur cases . . . support allowing waiver of the conflict that arises when an attorney must cross-examine a former client in order to effectively represent a current client." United States v. Oberoi, 331 F.3d 44, 50 (2d Cir. 2003). Such a waiver is allowed because:

> Although such a conflict might require a defendant to abandon a particular defense or line of questioning, he can be advised as to what he must forgo; he "can then seek the legal advice of independent counsel and make an informed judgment that balances the alteration in the trial strategy against the

>perceived effect of having to get a new and perhaps less effective defense counsel."

Perez, 325 F.3d at 124 (quoting Fulton, 5 F.3d at 613).

IV. Proposed Questions

In the event the Court determines that the defendants identified above can waive the potential conflicts of interest, the government proposes that the Court advise each defendant as follows:

>I am advised that your attorney currently represents or has previously represented [name of current or former client]. Your attorney has certain ethical obligations to his or her current or former clients. For example, it might be a conflict of interest for your attorney to investigate leads, introduce evidence or make arguments on your behalf that might tend to incriminate or cast suspicion on his or her current or former client.
>
>Your attorney also may have privileged information from his or her current or former client that could assist in your defense but that he or she could not disclose because of his or her ethical duties. It also is possible that another attorney could take a certain position with respect to your involvement (or non-involvement) in the crimes charged against you or your relationship with your co-defendants, whereas your attorney may be ethically barred from pursuing such a defense strategy due to contrary information he or she may have obtained from his or her current or former client.
>
>There may be other issues, in addition to the ones that I've just described, that can arise in which your attorney's ability to do certain things might be affected by the fact he or she currently represents or has represented other clients in matters related to this case or the Colombo family. No one

13

can foresee every possible conflict of interest.

Do you have any questions about what I have just explained to you?  Can you tell me in your own words what you understand the potential conflicts of interest to be?

You have the right to be represented by an attorney who does not have any possible conflicts of interest in representing you at all stages of this case, including any plea negotiations.  If you proceed with your attorney, you will be giving up that right.  Do you understand that?

Have you discussed these issues with your attorney?

You also have the right to consult with an independent attorney who can advise you about the possible conflicts of interest that might arise if you proceed with your attorney.  Do you understand that?

You are not under any pressure to make a decision about this right now.  You are entitled, if you wish, to a reasonable period of time to think about these matters, or to consult further with your lawyer or with another lawyer before you advise the Court what you wish to do.

V.    Conclusion

    For the foregoing reasons, the Court should notify the identified defendants of the potential conflicts raised above and conduct an appropriate inquiry pursuant to Rule 44(c) and Curcio. The Court should further advise the defendants regarding their right to conflict-free representation and determine if they can waive those rights.

             Respectfully submitted,

             LORETTA E. LYNCH
             UNITED STATES ATTORNEY


          By:    _____/s/_____
             Elizabeth Geddes
             Allon Lifshitz
             Assistant U.S. Attorneys

cc:    Counsel of record (by ECF)