GALGANO & ASSOCIATES
ATTORNEYS AT LAW

CROSSWEST OFFICE CENTER
399 KNOLLWOOD ROAD
WHITE PLAINS, NEW YORK 10603

TELEPHONE: (914) 428-2323
FAX: (914) 428-3298

May 25, 2012

Hon. Kiyo A. Matsumoto
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

     Re: *United States v. Andrew Russo*
        Indictment No.: 11-CR-30 (KAM)

Dear Judge Matsumoto:

  This letter is written in support of the defendant Andrew Russo's application pursuant to 18 U.S.C Section 3145(b) for *de novo* review of Magistrate Cheryl L. Pollak's January 25, 2011 Order of Detention Pending Trial.

  On January 20, 2011, a temporary order of detention was issued directing that Mr. Russo be held in custody pending a bail hearing. On January 25, 2011, a hearing was held before Magistrate Pollak. The Government initially proceeded by way of proffer arguing that Mr. Russo should be summarily detained because he had assumed the role of "acting boss" of the Colombo crime family. The Government contended that Mr. Russo had accepted this position in March of 2010 after having successfully completed extended periods of post release supervision for non-violent offenses. Notably, the Government appears to admit that at best Mr. Russo held the position of "acting boss" from March of 2010 to the date of his arrest in January of 2011. It was conceded at the hearing that the proffered bail package, which was collateralized by Four Million Dollars ($4,000,000) in real property owned by eleven sureties employed as dentists, paralegals, nurses, teachers and other professionals, was sufficient to guaranty Mr. Russo's appearance in court. The sole basis for detention was that the contention that Mr. Russo posed a danger to the community and simply would not abide by the conditions of his release because of his purported "acting boss" designation.

  The Government's argument that Mr. Russo poses a threat to the community is supported by little more than repeated references to his alleged position of "acting boss" for the limited nine-month time period. During this period, there was no allegation that

Mr. Russo engaged in violence, directed violence or otherwise sanctioned or encouraged others to participate in violent activities. Consistent with his non-violent nature during this nine-month period, Mr. Russo's criminal history is devoid of convictions that entail acts or threats of violence. He was convicted in the early 1980s of conspiring to bribe an IRS agent. In the late 1990s he was convicted of obstruction of justice and witness tampering for conspiring to help a potential grand jury witness avoid service of a subpoena and hiring a licensed investigator to contact a *discharged alternate* juror in a case involving his late son, Joseph Russo. In or about this same time, Mr. Russo was also charged with and pleaded guilty to fraud and bribery conspiracies involving a carting company in Long Island. None of these cases involved violence or threats of violence and bail packages were approved notwithstanding the allegation at that time that Mr. Russo was the "acting boss."[1]

When asked by the magistrate what the basis was for claiming that Mr. Russo "had his hand in any of the criminal activities that are charged in the indictment," the Government informed the Court that he was "captured on the consensual recording discussing with his captains one particular extortion that is charged in the indictment. That's the extortion of the Gambino crime family…"

After the Government's limited proffer, counsel for Mr. Russo offered the bail package and noted that Mr. Russo was 76 years old and resided with his wife and daughter. He has nine grandchildren, seven great grandchildren and despite his involvement with the criminal justice system, has never missed a court appearance.

---

[1] The meaning of the term "acting boss" is not entirely clear. In 1999, during the fraud and bribery case involving the carting company, it was alleged by the Government that Mr. Russo was the "acting boss" of the Colombo organization. When the parole commission relied upon this factual finding in revoking Mr. Russo's parole, an appeal was taken to the Second Circuit, which vacated the judgment in part finding that:

> The district court, and the Parole Commission, relied upon a finding by Judge Denis R. Hurley of the Eastern District of New York that Russo was the boss of the Colombo crime family... Submissions from counsel for Russo after oral argument indicate that Judge Hurley has since retreated from this position. Judge Hurley stated in a proceeding on August 10, 1998 "Mr. Russo may have been inappropriately labeled. Rather than being the acting boss, he may be a captain of the Colombo crime family." In light of this new finding, we vacate that part of the judgment relating to Russo's sentence, and remand the case to the district court with instructions to remand to the Parole Commission for resentencing on his parole violation.

2

Counsel noted that Mr. Russo had saved a stranger's life years earlier by heroically jumping into the bay to rescue the man who was drowning. He further noted that Mr. Russo was the recipient of civic awards and dedicated a substantial amount of his time to assisting the deaf community, many of whom came to court to show their support.

Finding the Government's proffer insufficient, Magistrate Bloom directed that the hearing be continued into the afternoon so that audiotapes could be played in open court. Since the hearing was conducted only a couple of weeks after the defendants' initial appearances, the prosecution advised the court that transcripts were unavailable.[2] During the afternoon session, Agent Scott Curtis testified that an informant advised him "once [Mr. Russo] got off probation in March of 2010.... Andrew was going to be the street boss."

At the bail hearing, the Government sought to play the audiotapes that were relied upon in their detention memo. However, the tapes were not audible and Agent Curtis was permitted to simply summarize what he recalled to have heard when he personally listened to them at some time earlier. Agent Curtis testified that based upon his recollection of the tapes, Mr. Russo "presided over" certain meetings, was introduced to others as "*representante*" and that in his opinion, Mr. Russo was "in charge of the Colombo family."

Agent Curtis admitted that in prior proceedings, he testified that Thomas Gioeli was the acting boss but that Mr. Gioeli's "...reign ended the minute he got arrested." Agent Curtis also conceded that in addition to Mr. Gioeli, others had recently been classified as "acting bosses" of the Colombo organization during this same period. Particularly damning to the bail request, Agent Curtis testified that during a June 29, 2010 meeting, Mr. Russo

> ...gives out specific instructions to Anthony Russo and to all the other captains there regarding this situation that we have brought up with Walter Samperi instructing them a situation—if a situation like this happens or somebody attacks one of us, one of our individuals associated with the Colombo family, we retaliate first. That's what we do. And then we'll sit down and we'll discuss matters after the fact. He gives out those specific instructions.

After hearing final argument, the magistrate found that

---

[2] Over the last year and a half that this case has been pending, there have been several status conferences where the issue of the availability of draft transcripts prepared by the Government has arisen. While counsel for Mr. Russo has signed the non-disclosure stipulation relating to the dissemination of such transcripts, no documents have ever been provided.

3

> …by clear and convincing evidence that the Government
> has established for purposes of bail that there is a serious
> danger to the community based upon [Mr. Russo'] role. It
> is not a per se finding that I am making. It is a finding
> based upon the testimony of the agent and the activities of
> the enterprise as defined by the agent and described in the
> indictment.

### The Indictment & Counts Against Mr. Russo

Mr. Russo is charged in count one of the indictment with RICO conspiracy. The two enumerated racketeering acts to support the RICO conspiracy count are also conspiracies. The first conspiracy involves extorting members of the Gambino organization into making restitution for physical injuries sustained by Walter Samperi. The second conspiracy involves an allegation of the extortionate collection of credit from Gino Pesce a/k/a John Doe #16. For purposes of this application, it is extremely important to note that since the initial bail hearing, defendant Anthony Russo has entered into a cooperation agreement with the Government. The indictment alleges only two co-conspirators in the Pesce extortion, Andrew Russo and Anthony Russo. Similarly, Anthony Russo and Andrew Russo were both charged as co-conspirators in the Gambino extortion conspiracy. It is respectfully submitted that through Anthony Russo's cooperation, the Government has learned and has 302s in its possession that substantiate Mr. Russo's claim that he never conspired to commit either one of these racketeering acts. And while Agent Curtis was permitted to summarize his recollection of the meeting involving the attack on Mr. Samperi and the effort to compensate him and get his medical bills paid, his recitation was a far cry from reality.

During the meeting, Anthony Russo explains that after the physical altercation, associates from the Gambino organization reached out to him and that he took it upon himself to attend a "sit down." Russo states:

> There was a little problem between a friend of ours and
> somebody, a friend of theirs…was a fight, kid got stabbed,
> he got paralyzed from the waist down. So they reached out
> to us and I went to a sit down with them and they got the
> message all mixed up and they threw a beef in…saying
> that I was asking for money when I wasn't and then Richie
> handled it from there.

Anthony Russo's recitation to the group is important in several respects. First, he is recounting something that happened in the past without the knowledge of Mr. Russo when it was happening. Criticizing Anthony Russo for his admission that he had arranged

4

a "sit down" to "make a deal with them without us knowing about it," Mr. Russo noted that it is

> Very, very important you don't take that upon yourself because it could wind up bad. I mean you know all mixed up...And then stuffs going on, we don't even know about it....

When Mr. Russo advised Anthony Russo that "there's no shame to keep contact with [us], Anthony Russo replied, "not at all." Mr. Russo continued urging Anthony Russo to

> let us know what you're doing, anything your going do or you open something or there is a beef with another Bogota, bring it in, make us aware, maybe we can help you, we can enlighten you, you know because this thing here...this kid got hurt, our first reaction is to get even...let's do...Let's go back and get even and then let's sit down and talk. How would you ever get even here, there no way.

Agent Curtis' characterization of the passage above, that Mr. Russo gave Anthony Russo and others specific instructions that if "somebody attacks one of us, one of our individuals associated with the Colombo family, we retaliate first. That's what we do" was an affront to this Court. No fair interpretation of the actual conversation could support the argument that Mr. Russo gave specific instructions to others to physically retaliate or resort to violence. Indeed, Mr. Russo encourages Anthony Russo to bring the problem in to discuss with others first because the natural and initial reaction is to get even, notwithstanding the fact that there really is no way to get even when someone is injured as seriously as Mr. Samperi.

Anthony Russo's comment that members of the Gambino organization got his message "all mixed up...saying that [he] was asking for money when [he] wasn't also casts serious doubt on the strength of the Government's case against Mr. Russo. First, Anthony Russo's admission confirms that Mr. Russo learned of Anthony's meeting with the Gambinos after the fact and that he did not approve of it much less conspire to extort. Second, Anthony Russo tells everyone that his message got mixed up and that he was not asking for money. If this statement is true, there can be no extortion as alleged by the Government and that count, as well as the RICO conspiracy count must be dismissed as to Mr. Russo. If Anthony's Russo's statement is false, it proves that although he may have asked for money, he did so knowing that such conduct would not be looked upon favorably. In that case, while Anthony Russo may have attempted to extort others, he certainly did not conspire with Mr. Russo. Either way, this Gambino extortion count as to Mr. Russo will be dismissed.

Not only did Agent Curtis mischaracterize the discussion he claimed to have listened to but he also took it out of context and I believe, had an affirmative duty to

5

disclose the following facts and statements that followed Mr. Russo statement proving that he was unaware that Anthony Russo arranged a "sit down" with others:

    A.    Discussions with Mr. Russo exploring the idea of Mr. Samperi hiring a lawyer to pursue civil claims;

    B.    Mr. Russo discussing standing for a non-US citizen like Mr. Samperi to assert civil claims to recover money for his injuries;

    C.    Free medical coverage in Italy;

    D.    Discussions that they "have to talk to the right attorney" with Mr. Russo inquiring "so maybe we can get him something…"

    E.    Mr. Russo responding to Richie Fusco's belief that since Mr. Samperi does not have legal status, he is not entitled to benefits by saying, "regardless of the fact that he is illegal he still has a case….he has rights….he got stabbed in New York and there is a police department that is supposed to protect him…"

    F.    Discussions among the group about throwing some type of benefit or dance with the proceeds going to Mr. Samperi to help him pay for his medical bills.

After extensive discussions about ways to help the injured Mr. Samperi get money to pay for his medical bills, Richie Fusco informs the group that the people responsible for stabbing him are currently paying the medical bills. Mr. Russo responds to that by saying, Well in the meantime we'll have to look into a lawyer to see if we can get him some help or if we can't, if you can go back or if you want to say listen, I think we have the solution…maybe this guy's going to go back [to Italy] if we could have a couple you know maybe a hundred, hundred fifty thousand. Give it to him and let him go back."

Aside from the fact that the consensual recording conclusively establishes that Mr. Russo was not involved in any type of conspiracy to extort money, the Government's own admitted facts render its extortion theory a factual impossibility. The Government alleges that Mr. Russo and other members of the Colombo family conspired to extort the Gambino organization. This simply cannot happen. During the trial of Michael Uvino, et. al, 07 CR-725, (E.D.N.Y Dec. 3, 2008), Investigator Carillo, a 25 year veteran in the US Attorneys Office testified that members of different organized crime families could not extort one another. Investigator Carillo testified that while one member might attempt to extort, it would not be extortion because "they would have a sit down."

The only other substantive count against Mr. Russo is the alleged conspiracy with Anthony Russo to, by means of extortion, collect a debt from Gino Pesce. Again, at the time of the initial bail hearing, the Government did not have the type of unfettered access

6

to Anthony Russo that they now have. I suspect that over the last year or so, various AUSAs have met with him a few times and have had the opportunity to discuss whether he ever conspired with Mr. Russo to collect a debt owed to actor Federico Castelluccio. This never happened.

During the course of lunch, a consensual recording reveals the origin of this rather creative count lodged against Mr. Russo. In the background, you can hear people talking about the movie, Home Alone, an actor Joe Pesce's role in the film. Mr. Russo interjects and says that Pesce's relative, Gino, took money from a friend of his for a movie script and asked if anyone at the table knew anybody in Jersey that might know him. Anthony Russo then responded that he would try to get a "line on him." As it turns out, there was no script, no disagreement and no money owed to Mr. Castelluccio. There were never any discussions about threats or demanding money from Mr. Pesce, who when questioned by the FBI admitted that he had never been approached by anyone.

The RICO conspiracy alleged in the indictment spans over ten years. Mr. Russo's alleged involvement was nine months. While he is charged with a RICO conspiracy as the alleged acting boss, the underlying substantive conspiracy counts are simply belied by the consensual recordings for which we continue to await receipt of draft transcripts.

## MR. RUSSO IS ENTITLED TO BAIL

The Government has no choice but to admit that Mr. Russo dutifully complied with the conditions of his supervision when released from prison after serving extended periods of incarceration. While on court ordered supervised release, Mr. Russo did not socialize with much less assume a leadership role among the people he was instructed not to associate with. He complied with the court order conditions of supervision. Yet, somehow the Government seeks to credibly advance the argument that Mr. Russo poses a danger to the community and will not abide by the conditions of his release pending trial. This makes no sense particularly because their theory is grounded in the assumption that the title of "acting boss" prevents you from adhering to a court mandate or not posing a threat to the community. Well, by the Government's own account, the Andrew Russo that stands before the court is not an "acting boss." As Agent Curtis noted, Mr. Gioeli lost this designation the moment he was incarcerated. Accepting the Government's allegation as true, Mr. Russo was an acting boss for a few months during a period of time that the organization was fractured. The Government contends that Mr. Russo was trying to reign in the members that were out doing their own thing with their own factions. That people who did not come in, he considered no longer welcome at his special lunches. Using these facts as alleged by the Government, how does it logically follow that Mr. Russo is criminally or even morally responsible for any person who is even remotely associated with the organization?

Mr. Russo is a 77-year-old great grandfather who resides with his wife in Old Brookville, New York. He is quite ill, having been recently diagnosed with stage 3-kidney disease. He suffers from poorly controlled Hypertension, Hypothyroidism and Hyperlipidemia. At the present time, he is prescribed various medications including

Simvastatin, Omerprazole, Metoprolol, Hydrochlorothiazide, LevoTHYROXINE and Lisinopril. Earlier this month, while shackled and coming off a bus after a court appearance, Mr. Russo fell to the ground sustaining injuries to his arm and ribs. Earlier during his period of detention in September of 2011, Mr. Russo was on the phone checking to see if his family members were safe when he was struck by a series of rubber bullets fired by corrections officers. He was also struck in the leg with a tear gas canister as the guards sought to lock down all of the prisoners at MDC during the earthquake. No

At a pretrial detention hearing, the government's burden is to establish by clear and convincing evidence that **no conditions of release will reasonably assure the safety of the community.** *United States v. Arena*, 894 F. Supp. 580, 585-86 (N.D.N.Y. 1995)(*citing United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985). Here, the magistrate held that the Government established by clear and convincing evidence that "that there is a serious danger to the community based upon [Mr. Russo'] role." Certainly this is not the same standard as proving "no conditions of release will reasonably assure the safety of the community." Mr. Russo has demonstrated that he can comply with conditions of release without violating the directive of the court. His family, friends and loved ones are willing to post substantial collateral, he is willing to submit to home detention with electronic monitoring, use of only one phone and monitoring of those calls, an approved visiting list, supervision by Pre-Trial Services with random home visits, the surrender of his passport and any other conditions that the court deems appropriate.

Because the evidence does not support a finding of dangerousness, it is respectfully submitted that the court should set reasonable conditions for Mr. Russo's release.

Respectfully submitted,

George Galgano

8